MIDDLE TENNESSEE MILLS *v.* ROCKY RIVER COAL & LUMBER
Co. *et al.*

(*Nashville,* December Term, 1940.)

Opinion filed December 21, 1940.

32

F. E. HARRIS and W. L. COOPER, both of Cookeville, and ROBERTS & ROBERTS, of Nashville, for complainant.

FRANK DAVENPORT, of McMinnville, and HENRY E. COLTON, of Nashville, for defendants.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit by the complainant, the Middle Tennessee Mills, to set aside as fraudulent under the Bulk Sales Act a conveyance of a stock of merchandise by Rocky River Coal & Lumber Company to Greenbriar Lumber Company. The chancellor sustained the bill but his decree was modified by the Court of Appeals and the case is before us on petition for *certiorari*.

After this suit was filed, an insolvent bill was brought against the Middle Tennessee Mills and a receiver appointed for that corporation. By agreement of the parties involved, $800, an amount sufficient to cover the complainant's claim, was paid into court. An attachment

was levied on the transferred merchandise in favor of the complainant at the time its bill was filed. Complainant's contention is that by virtue of its attachment it obtained a prior lien on the stock of goods and it is entitled, out of the sum in court, to have its claim paid in full. The receiver contends that the complainant is only entitled to a *pro rata* payment on its claim and that he (the receiver) is entitled to the remainder of the fund in court to be distributed *pro rata* among the defendant's other mercantile creditors.

Our Bulk Sales Statute is contained in Code, section 7283, *et seq.* Reference to the statute indicates that it was the intention of the Legislature to prevent preferences of creditors and to have an equal distribution of a stock of goods conveyed in violation of the statute among all creditors. The statute provides that the purchaser shall notify all creditors of the proposed sale "at least five days before the sale" and that no creditor shall bring suit within five days after notice received from any source of the intended sale and that the time of notice shall be dated from the time of the mailing and registration of such notice. The legislative scheme evidently was to put all creditors on an equal footing rather than to favor the diligent creditor.

This court has previously expressed this view of the proper construction of the Bulk Sales Law. In *Fechcimer-Keifer Co.* v. *Burton,* 128 Tenn., 682, 164 S. W., 1179, 1180, 51 L. R. A. (N. S.), 343, the court approved, from *Fitz Henry* v. *Munter,* 33 Wash., 629, 74 P., 1003, construing a similar statute, the following: "The object of this law was to hold the goods of debtors under such circumstances as a trust fund for the benefit of all creditors, and to hold the purchaser in possession as a trustee for such creditors. This being so, the cause will have

to be reversed, with instruction to distribute the funds *pro rata* to all of the creditors who are parties to the suit.''

*Fitz Henry* v. *Munter, supra,* was a case quite similar to the one before us. There had been a sale in violation of the Washington statute, which was attacked, and attachments and garnishments were levied at the instance of creditors on the purchase price of the stock in the hands of the purchaser. The purchaser paid the money into court and the controversy was as to whether the attaching creditors took priority in the distribution of that fund. The Supreme Court of Washington expressed itself in the language just above quoted and in terms approved by this court.

Later, in *Elledge* v. *Anderson,* 133 Tenn., 478, 182 S. W., 234, 235, this court referred to property conveyed in violation of the Bulk Sales Statute as ''property charged by the statute with a trust in favor of Anderson's [the seller's] creditors.''

It is said in 24 Am. Jur., 354, that ''The purpose of the Bulk Sales Acts is to constitute the goods of the debtor a trust fund for the benefit of all his creditors, and the purchaser is liable to the creditors to the extent of the value of the purchased property.''

██ So, under the authorities cited, we think that property conveyed in violation of our Bulk Sales Law passes into the hands of the purchaser charged with a trust in favor of all the seller's creditors and that an attaching creditor gets no preference.

A precautionary petition for *certiorari* was filed by the receiver to bring up matters not considered by the Court of Appeals. Such matters are immaterial under the decision of this court.

It is assigned for error by complainant that the Court of Appeals improperly considered the receiver's petition herein inasmuch as, it is said, the petition was filed in the court below after final decree and at a subsequent term of court. There is much discussion in the briefs as to whether the decree preceding the intervening petition was final. This question, however, is not determinative.

As heretofore noted, the sum of money ($800) in controversy is still in the court below. It was not paid out after the supposed final decree. This is a trust fund. Where a trust fund is in court, as in proceedings for winding up an insolvent estate, or in a general creditor's proceedings, any owner of a claim is entitled to present the claim at any time before the fund has been finally distributed, even at a subsequent term. *United States Fidelity & Guaranty Co.* v. *Railey,* 120 Tenn., 357, 371, 113 S. W., 397, and cases cited.

Both petitions for *certiorari* are denied.