# THIRD NAT. BANK OF NASHVILLE v. KEATHLEY.—242 S. W. (2d) 760.

Western Division at Jackson. March 5, 1951.

On Rehearing April 5, 1951.

Petition for Certiorari denied by Supreme Court, August 31, 1951.

84

Miles & Miles, of Union City, for complainant.

Hudgins & Hudgins, of Union City, for defendant.

SWEPSTON, J. This is an appeal by both the complainant and the defendant Keathley from the decree of the Chancellor.

Complainant sued to recover a money judgment against Keathley on certain conditional sale paper purportedly executed by "Keathley and Gray", a partnership and to set aside a sale by Keathley of a used car business to defendants Hamilton and Perryman on the allegation that the same was fraudulent in fact as to creditors of Keathley and for failure to comply with the Bulk Sales Law as to notice etc.

Defendant Keathley denied the existence of the partnership at the time of the execution of said conditional sale papers, denied that he or anyone else duly authorized had executed said papers, and denied that he was liable on same or that he had later promised to pay same as alleged in the bill and denied that said partnership had

ever done any business with complainant. He averred that said partnership was dissolved before the execution of any of said paper. He denied that the sale of the used car business was in fraud of creditors and averred there was full consideration for same, and denied said sale was in violation of the Bulk Sales Law.

The hearing was upon depositions.

The Chancellor entered a judgment against Keathley on the paper, but decreed the transfer of the used car business was not fraudulent as to creditor and that the Bulk Sales Law was not applicable to the sale of such business.

Keathley appeals from the money judgment. Complainant appeals from the failure to set aside the sale of the used car business as being in violation of the Bulk Sales Law, Code Section 7283 et seq.

It will probably be of aid in an understanding of the matters raised by the respective assignments of error to set out in full the Chancellor's findings of fact.

"This suit was instituted by complainant bank alleging that, as partners, Harold L. Keathley and Wallace Gray did on the 4th day of April, 1947, the 1st day of May, 1947, and the 7th day of June, 1947, execute to Harold Midyett, doing business as the Tennessee Music Distributors, conditional sales contracts and notes in the respective sums of $1,562.00, $2,374.90 and $15,930.00 on which at the time of the filing of the bill there were due the following respective amounts, namely: $165.10, $810.90 and $10,169.04, for which said sums this suit is brought by complainant bank as assignee of said notes and contracts, alleging that the bank had purchased same in due course and without notice prior to maturity.

"The complainant sues the defendants Perryman and Hamilton, respectively the Uncle and Father-in-law of

defendant Keathley, seeking to set aside a bill of sale purporting to sell Keathley's interest in certain used cars, lease of lots where the cars were located and a used car and car agency business on the grounds of fraud and failure to comply with the Bulk Sales Law. This sale sought to be set aside was of March 3, 1948.

"The defendant Keathley denies that the complainant is entitled to a judgment on said notes, because:

"a. The partnership was dissolved prior to the date of the execution of any of the three notes sued on.

"b. That the bank accepted the contracts and notes with all of the denfes (sic) abailable (sic) to Keathley against the original holder of the notes, Harold Midyett, doing business as the Tennessee Music Distributing Company.

"c. That the contracts were executed by Grey when he knew there was no partnership between himself and Keathley obtaining and that the contract and notes were conceived in fraud.

"d. That the sale by Keathley to Perryman and Hamilton was a bona fide sale and for a valuable consideration.

"e. That the Bulk Sales Law is not applicable.

"The Court has reached the conclusion from all of the voluminous testimony set forth in this record of five volumes, that Keathley and Grey formed a partnership for the purpose of running juke boxes and pin ball machines and that this partnership continued up to June 20, 1947, when it was dissolved by a written agreement between the said parties.

"That during the existence of said partnership said notes and contracts were executed to the Tennessee Music Distributing Company that is to say Harold Midyett, and that these were separate documents and among them

were the three notes and contracts sued upon; that these notes were sold by the said Harold Midyett to the complainant bank for a valuable consideration and that the notes were negotiable instruments; that the bank was an innocent purchaser without any notice of any defenses and that the defendants cannot avail themselves of defenses against the bank which might have been available as against Midyett.

"This being true it necessarily follows that the complainant bank is entitled to a judgment on said notes as against the defendant Keathley.

"On March 3, 1948 Keathley owned a franchise to sell Kaiser-Frazer automobiles, which franchise is not shown to be of any value. At the same time he owned a second hand car business and on said date by a bill of sale he sold this business to his co-defendants and relatives, Perryman and Hamilton. This is the sale attacked as fraud and in violation of the Bulk Sales Law by the complainant.

"The Court finds that both Perryman and Hamilton had advanced funds to Keathley in about the amount, or in excess of the value of this business, and that realizing they were about to sustain a loss they took the matter up with Keathley and insisted that he transfer this business to them, they agreeing to pay said notes and have same cancelled. The notes were due to them and to banks with their endorsement as guarantors, or sureties.

"The Court finds that there was a valid consideration for this conveyance and that no fraud was involved, although a preference was granted them. They became and are the bona fide owners of said used car business and one of them spends a good deal of his time in looking after this business, although they retained Keathley as

the manager and supervisor, paying him a salary for his services.

"The Court further finds that this sale was not in violation of the Bulk Sales Law.

"Having so found it necessarily follows that the suit must be dismissed as against Perryman and Hamilton.

"A decree may be submitted in accordance with these findings.

"W. W. Herron
"Chancellor".

The errors assigned are the finding:

1. That the partnership of Keathley and Gray continued up to June 20, 1947;

2. That the notes and contracts were executed to Tennessee Music Distributing Company (Harold Midyett) during the existence of the partnership;

3. That the suit was on three notes and contracts;

4. The failure to find that the note and contract of June 7, 1947 was fraudulent and fictitious;

5. That said instruments sued on were negotiable and that Keathley cannot avail himself of defenses against complainant which would have been available against Midyett;

6. That complainant is entitled to a judgment against Keathley on the three notes for balances due of $12,467.68 principal and interest and the further sum of $1,246.88 attorney's fees and all costs of court.

Considering first that part of assignment five as to whether said instruments were negotiable, we think it obvious that the instruments of April 4 and May 1 are not negotiable and the Chancellor was in error in finding that they were.

As defined by the N. I. L., Code Section 7325, among other requirements, an instrument to be negotiable must

be payable "to order or to bearer". See cases cited in note to the Section. Williams' Code; also Davis v. Union Planters Nat. Bank & Tr. Co., 171 Tenn. 383, 387, 103 S. W. (2d) 579.

The first two transactions were conditional sales contracts in which the purchaser promised to pay the seller, but do not contain words of negotiability as above defined.

The stipulation in the record page 107: "In short, it is hereby stipulated that the Third National Bank in Nashville acquired the three notes sued on for a valuable consideration and before maturity, and without notice", does not make them negotiable.

The third transaction dated June 7 consisted of a conditional sales contract containing a promise to pay and a separate promissory note payable "to order of Tennessee Music Distributing".

Defendant maintains that the negotiability of the separate note payable "to order" is destroyed by reason of the following provision in the note:

"Title to property described in Sales Contract of even date herewith is retained by the seller or holder of this note until all amounts due hereon are paid in full", and by the provision in the contract as follows:

"Time is of the essence of this agreement, and if and when seller or his assigns deem themselves insecure for any reason, or if the undersigned fails to make any of said monthly installment payments as above specified, all remaining installments may, without notice, be declared immediately due and payable".

Counsel cites a number of cases from other jurisdictions sustaining his arguments.

The question is settled in Tennessee adopting the opposite view. Taylor v. Goodrich Tire & Rubber Co., 20 Tenn. App. 352, 362, 98 S. W. (2d) 1094; Davis v. Union

P. Nat. Bk. & Tr. Co., supra, 171 Tenn. at page 387, 103 S. W. (2d) at page 580, et seq.

These cases hold (1) that negotiability is not destroyed by a provision retaining title nor (2) by an acceleration of maturity of installment payments by some act of the maker nor (3) by a mere reference in the note to a conditional sales contract, mortgage or other collateral security instrument, where the note does not incorporate the terms of the collateral instrument into the note such as by the expression ''subject to the terms of'' the collateral instrument.

The collateral contract is treated as being merely an incident of the note or bond or other instrument otherwise properly negotiable in form.

And of course, in this State a title retention contract is but a form of lien in the nature of a chattel mortgage to secure the purchase price. Franklin Sav. & Loan Corp. v. Snapp, 179 Tenn. 151, 153, 163 S. W. (2d) 332.

Counsel for the Bank claims that the effect of the stipulation, however, is that the first two notes are to be treated in this case as negotiable.

This position is not tenable for two reasons. First, because the two documents are non-negotiable on their face, hence it is immaterial how honestly and innocently and for what value they were acquired; the documents are exhibited so that no stipulation of all the essentials of a holder in due course, Code Section 7376 could change an instrument non-negotiable *in form* to a negotiable instrument.

These essentials of the statute are applicable and relevant only when the form of the instrument under Code Section 7325 makes it negotiable.

Secondly, the stipulation if otherwise effective, which it is not, omits the essential of "good faith". War Finance Corp. v. Ready, 2 Tenn. App. 61, 67.

The first part of the fifth assignment is sustained as to the first two transactions but overruled as to the third.

It follows that the first two transactions are subject to any defenses against the Bank that would have been available against the original seller, Midyett.

As to the third transaction, under Code Section 7381 "A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon".

But if the instrument is negotiable in form under Section 7325, then under 7383, "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title".

What then are the defenses, if any raised by Keathley against the payee Midyett?

This brings up the first two assignments.

██ Keathley admits that the partnership of Keathley and Gray existed from November 1946 to about March 1947, but his claim is that it was then dissolved by agreement.

We do not find it necessary to determine whether the dissolution occurred then or whether it occurred June 20, 1947, as apparently reflected, without consideration of

other evidence, by a written agreement of dissolution relied on by the Bank.

It does not follow that a dissolution as between the partners necessarily terminates liability of the retiring partner to third persons who subsequently deal with the remaining partner on the assumption of the continued existence of the firm. 40 Am. Jur. 307, Section 258.

Under Code Section 7874, if such third person had previously dealt with the firm, he must have actual knowledge of the dissolution, which may be either express notice or such as may be inferred from the circumstances; even if such third person has not previously dealt with the firm but has knowledge of the existence of the firm and no knowledge of its dissolution, he must be given constructive notice; otherwise the retiring partner may be held liable. Letellier-Phillips Paper Co. v. Fiedler, 32 Tenn. App. 137, 222 S. W. (2d) 42.

Keathley admits that the firm had dealt with Midyett prior to the execution of the three documents in suit. He admits that he gave no notice to Midyett or to any other creditor except to Mr. Kerr of the Old and Third Bank of Union City.

We find no evidence of knowledge of dissolution on the part of Midyett until the large note executed June 7, 1947.

But we think it clearly appears that he acquired knowledge before this transaction.

Gray's testimony is that he wanted to buy five Juke Boxes, he needed $3400.00 to buy out Keathley and $1200.00 for a truck and possibly some other money. The price of the machine was $885.00 each or a total of $4425.00, that Midyett filled out the note completely except the serial number of the machines, which he said he would insert later when the machines arrived. That he asked Midyett about how to sign the note and Midyett

told him to sign the firm name because its credit was established and that he would call Keathley and tell him about it. Midyett later inserted 18 serial numbers in the contract but never delivered more than three machines.

At the same time after having the contract signed in the firm name, Midyett had Gray execute to him a chattel mortgage in the same amount as the retention of title note to secure the note and it covered all of the firm assets as well as the alleged 18 machines not yet on hand, but this was signed only by Gray.

It is inconceivable therefore that Midyett was not aware of the fact that Gray was buying out Keathley and that as soon as the latter received Midyett's check for $3400.00, his signature on the mortgage would not be necessary. Also, that the proceeds of this transaction would benefit Keathley in no way except the sum necessary to buy him out; that was obviously of no benefit to the firm but for the benefit of Gray who thereby acquired all assets of the firm being dissolved and the interests of Keathley determined and paid for.

In that situation so far as concerns Midyett the dissolution of the firm, if it had not already occurred, was a part of the entire transaction of June 7 all known to Midyett and he could not rely on the claim of want of notice or knowledge and there is nothing in evidence to show that Gray was authorized to continue the use of the firm name.

There is no right to do so, except by contract. 40 Am. Jur. 271, Section 200.

It is apparent therefore, that Keathley has no valid defense to the first two transactions against Midyett and hence none against complainant Bank.

It is equally apparent as to the third, the negotiable note and contract of June 7, Keathley was defrauded by both Gray and Midyett when they used the old

firm name as signature, and that this would have been a good defense against Midyett, it being delivered by Gray in breach of faith with Keathley to Midyett who knew of the want of authority in Gray; hence the title was defective when Midyett negotiated it to the Bank. 8 Am. Jur. 609, Sec. 1022; 8 Am. Jur. 611, Sec. 1024.

When the above facts appeared in evidence under Keathley's answer to the effect that he did not execute nor authorize the execution of said note, the burden then rested on the holder to show that it acquired title as a holder in due course. Code Section 7383; National Bank of Commerce v. Chatfield, 118 Tenn. 481, 101 S. W. 765, 10 L. R. A., N. S., 801; Fox v. Cortner, 145 Tenn. 482, 239 S. W. 1069, 22 A. L. R. 1314; Young v. Harris-Cortner Co., 152 Tenn. 34, 268 S. W. 1120; War Finance Corp. v. Ready, supra; Charles A. C. Hill & Co. v. Belmont Heights Baptist Church, 17 Tenn. App. 603, 69 S. W. (2d) 612.

One of the requisite elements in the showing to be made by a holder under this burden is that he acquired the paper in good faith. See above cases.

The Stipulation, R. 107, relied on by the Bank does not include this element. Hence, the question is—Has the Bank carried the burden of showing good faith in the acquisition of the note?

A. B. Batt testified in substance as follows:

That he handled all three transactions for the Bank in purchasing the paper from Midyett; that the Bank had not had any of "Keathleys & Gray's" paper before the first of these dated April 4, 1947; that the Bank purchased other paper from Midyett previously under his personal handling and had obtained financial statements from Midyett but not from the makers of the paper and such was never required from makers of conditional sales

contracts; that Midyett always furnished information about makers of paper he offered them and the Bank relied on Midyett's statements; that this paper came to him in the regular course of business, but he does not remember whether it arrived by hand or by mail, as both methods are used; that he had no notice of dissolution of the firm; that Midyett was on March 3, 1948 indebted to the Bank for about $130,000.00, which by August, 1948 had been reduced to about $50,000.00; that so far as he knew neither he nor anybody else at the Bank knew anybody other than Midyett in these transactions.

While Mr. Batt was not asked expressly whether he knew of any defect in the title when he bought any of this paper, it seems apparent that such is the only reasonable inference from what he did say. It is stipulated that he paid value before maturity and without knowledge or notice; the value was full. We think the Bank has carried the burden of showing good faith in the acquisition of the negotiable note.

We hold, therefore, that the Bank is entitled to recover on the third transaction as well as on the first two. The views herein expressed render all assignments undeterminative and same are overruled.

The Bank's appeal from the holding of the Chancellor that the sale by Keathley on March 3, 1948 of the automobile sales business to Perryman and Hamilton, was not in violation of the Bulk Sales Law, will now be dealt with.

The three assignments of error are:

1. In the holding that the sale of "Keathley Used Car" business was not in violation of the Bulk Sales Law;

2. In dismissing the bill as to the purchasers and discharging the attachment of the property;

3. In not rendering a money judgment against said

purchasers for the amount of the judgment against Keathley.

The proof is that Keathley was engaged in the business of selling automobiles both new and used; that he became indebted to Perryman, his uncle and to Hamilton, his father-in-law in the respective amounts of about seven and six thousand dollars for funds borrowed to operate the business; that about the date complainant Bank made demand for the payment of the debt held by it Keathley sold the automobile business to Perryman and Hamilton in settlement of what he owed them. The Chancellor held the sale was not fraudulent in fact, there is no appeal from this holding, and we think the Chancellor was correct. It is stipulated, however, that the Bulk Sales Law was not complied with as to notice to Keathley's creditors.

The question is whether a stock of automobiles new or used kept for sale and sold from day to day and the stock replenished with others for sale is within the definition of the Act a stock of merchandise?

Counsel have thoroughly briefed their respective contentions. There are no Tennessee cases on automobiles and apparently only one case may be found elsewhere dealing with a Bulk Sales Law. It is cited in 24 Am. Jur. 360, Section 256, note 12; 37 C. J. S. Fraudulent Conveyances, Sec. 479 c., note 65, p. 1332; 37 C. J. S. Fraudulent Conveyances, Sec. 480, note 8, p. 1336, and is the case of Brinson v. Monroe Auto & Supply Co., 180 La. 1064, 158 So. 558, 561, 96 A. L. R. 1206. This case holds that "stock of merchandise" embraces the assets of a partnership engaged in the business of buying and selling automobiles, replacement parts and accessories. Held, a sale in bulk violated the Act. Some fixtures and tools

were included, but the Louisiana Act includes such items in its prohibition.

Counsel cites also two Texas cases dealing with a statute declaring mortgages on stocks of "goods, wares, or merchandise" to be fraudulent and void. First Nat. Bank of Stephenville v. Thompson, Tex. Com. App., 265 S. W. 884, 886; City Nat. Bank v. Morgan, Tex. Civ. App., 267 S. W. 1078.

Both cases hold that a stock of automobiles for sale at retail are within the statute.

The texts cited supra state that the Bulk Sales Laws are directed at a stock of merchandise handled by a trader or merchant whose principal business is selling from day to day and constantly replenishing his stock, that is, selling "in the ordinary course of trade in the regular and usual prosecution of the seller's business", as our statute reads. See the numerous cases cited Williams' Code, Section 7283. Counsel for defendant contends that the Act does not apply here because many of the used cars were substantially repaired and repainted to make them saleable, relying upon cases from many jurisdictions holding that the "merchandise" must be such as is sold in the same form in which it was purchased without any change of character by the labor and mechanical skill of the dealer. This line of cases is not applicable to this case, because Keathley testified that all the repairs made to the cars he sold in bulk were made by the purchasers after he had sold the business. Also, for the reason that repairs and paint jobs on some cars would be merely incidental to the usual business of handling new and used cars, which usually required no repairs or only slight repairs and adjustments.

We hold that the sale of the automobile business was in violation of the Bulk Sales Law and that said sale

was void, and the Chancellor was in error in failing to hold the purchasers accountable as trustees for the value of the "merchandise", exclusive of the value of the tools and fixtures. The statute requires notice etc. to all creditors of the seller of a stock of merchandise and not merely to mercantile creditors. Mahoney-Jones Co. v. Sams Bros., 128 Tenn. 207, 159 S. W. 1094; York v. Ambrose, 156 Tenn. 314, 300 S. W. 586.

A judgment will be entered here against Keathley for $13,714.45 with interest from the date of the judgment below, which should be but is not reflected by the record and for costs of the appeal; the sale to Perryman and Hamilton will be decreed void and held for naught and they are declared to be trustees of the merchandise, exclusive of tools and fixtures, taken into possession by them; the cause is remanded for the purpose of having a determination of (1) the correct amount due each of the purchasers of the merchandise, (2) the value of the merchandise coming into their hands, (3) the amount owing creditors other than complainant Bank and Perryman and Hamilton, and (4) the pro rata share of the value of the merchandise due complainant, for which a judgment will be entered in favor of the Bank against Perryman and Hamilton jointly and severally, all under the rules of Slaughter v. Cooper Corp., 20 Tenn. App. 241, 97 S. W. (2d) 648; Fecheimer-Keifer Co. v. Burton, 128 Tenn. 682, 164 S. W. 1179, 51 L. R. A., N. S., 343; Middle Tenn. Mills v. Rocky River Coal & Lumber Co., 177 Tenn. 31, 145 S. W. (2d) 787.

Anderson, P. J., and Baptist, J., concur.

## ADDENDUM

SWEPSTON, J. Perhaps we should treat more fully the Bank's contention that it is entitled to a judgment

against the purchasers of the stock of automobiles for the full value of the property transferred.

Counsel for the Bank will find that in the Slaughter Case, supra, the value of the assets transferred was $600, whereas the total debts were less than $500, so there was no reason to prorate. Hence the judgment for the full amount of the claim of about two hundred and fifty dollars was proper.

In the instant case the seller's total debts are obviously more than the value of the property transferred. Hence, it is necessary to prorate. The sale was preferential but not fraudulent in fact, as the Chancellor held, because the consideration was adequate. Therefore when the sale is set aside, the debt to the purchaser is reinstated and they are entitled to share pro rata. Keller v. Fowler Bros. & Cox, 148 Tenn. 571, 256 S. W. 879, and the cases cited in the original opinion on the last page.

This case also expressly overrules any suggestion to the contrary that may be inferred from certain expressions in the case of Daly v. Sumpter Drug Co., 127 Tenn. 412, 417, 155 S. W. 167.

Anderson, P. J., and Baptist, J., concur.

## ON REHEARING

SWEPSTON, J. A petition to rehear is filed by the Third National Bank with respect to our holding that it would have to share pro rata with other creditors including the purchasers of the stock of automobiles and in remanding the cause for a reference.

The two points raised are (1) that we failed to give effect to the replevy bond given by Perryman and Hamilton by which the attached property was released to them and that we should have entered judgment on the

bond for the full amount of the debt, interest and costs under the terms of the bond, and (2) that we did not order judgment against the sureties on the replevy bond.

Complainant in its original brief contended that it was entitled to a judgment on the replevy bond for the full amount of the judgment against Keathley, but owing to the fact that no authority was cited on the question and no attempt made to rationalize this contention in the light of the pro rata rule and the further fact that defendants omitted discussion of the point, we failed to examine the question, but are quite agreeable to doing so now.

The language of the bond is:

"We, H. T. Hamilton and J. T. Perryman, principals, and A. E. Keathley and Allie May Keathley, J. R. Meek, Jr., Mrs. Josie Hamilton, Roy Perryman and Edna P. Perryman, sureties, acknowledge ourselves indebted to the Third National Bank in Nashville of Nashville, Tennessee, in the sum of Fourteen Thousand ($14,000.00) Dollars. But if, in the event the said H. T. Hamilton and/or J. T. Perryman are cast in the suit with the said The Third National Bank in Nashville, of Nashville, Tennessee in the Chancery Court at Union City, wherein the property of the said H. T. Hamilton and/or J. T. Perryman has been attached, and which property consists of the following described automobiles: 1937 Dodge Pickup, 1941 Ford Tudor, 1939 Buick Sedan, 1941 Chevrolet Sedan, 1938 Chevrolet Sedan; 1940 Chevrolet Sedan, 1941 Ford Sedan, 1940 Chevrolet Sedan, 1937 Ford Pickup, 1937 Dodge Pickup, 1940 Dodge Truck, 1941 GMC.

We, the said H. T. Hamilton and/or J. T. Perryman shall pay the debt, interest and cost sued for, then this bond, which is given to replevy said property is to become void".

This bond was given under Code Section 9460-9466. Section 9460 reads: ''The defendant in an attachment suit may replevy the real or personal property attached by giving bond, with good security, payable to the plaintiff, in double the amount of the plaintiff's demand, or, at defendant's option, in double the value of the property attached, conditioned to pay the debt, interest, and costs, or the value of the property attached, with interest, as the case may be, in the event he shall be cast in the suit''.

 This bond does not conform to the statute in either alternative allowed the defendant by the above statute, because the penalty is not in double the amount of the plaintiff's claim, nor is the value of the property stated in the bond. It is nevertheless enforceable so as to give the plaintiff all the remedies to which he would have been entitled as if the bond had been executed in strict conformity to the statute against both principals and sureties. Ward v. Kent, 74 Tenn. 128; Sadler v. Murphy, 18 Tenn. App. 340, 77 S. W. (2d) 70; Code Sections 9463, 1836 and 1837.

And the bond will at the same time be construed as favorably to the sureties as the language under the above rules permit. Fleshman v. Trollinger, 163 Tenn. 157, 40 S. W. (2d) 1029.

This bond is plainly conditioned to pay the debt, interest and costs and if this amount is within the penalty of the bond, no question arises on that score.

The question is whether the pro rata rule is applicable to require the entry of a judgment on the replevy bond in any form other than is prescribed by the attachment and replevy statutes?

We find no cases on the specific question where the Bulk Sales Law is involved.

If the property fraudulently conveyed has been disposed of or so concealed or commingled with other property by the grantee that it cannot be reached or identified, he may be subjected to personal liability in favor of seller's creditors for the value of same pro rata. Solinsky v. Lincoln Sav. Bk., 85 Tenn. 368, 4 S. W. 836; Daly v. Sumpter Drug Co., 127 Tenn. 412, 155 S. W. 167; Mahoney-Jones Co. v. Sams Bros., 128 Tenn. 207, 159 S. W. 1094.

If the property is available, it may be attached and all creditors will, as above, share pro rata. Fecheimer-Keifer Co. v. Burton, 128 Tenn. 682, 164 S. W. 1179, 51 L. R. A., N. S., 343.

In neither instance is the attaching creditor entitled to preference or priority over creditors who do not attach, Middle Tenn. Mills v. Rocky River Coal & Lbr. Co., 177 Tenn. 31, 145 S. W. (2d) 787, although the attaching creditor may be allowed reimbursement from the common fund for his costs and expenses in prosecuting the suit. Rains v. Rainey, 30 Tenn. 261, 264; Marr v. Bank, 44 Tenn. 471, 484; Shea v. Mabry, 69 Tenn. 319, 344; Puckett v. Richardson, 74 Tenn. 49, 63.

As already said, there seems to be no case decided since the enactment of the Bulk Sales Law in 1901, where the attached property was replevied, as distinguished from a replevin action as in Neas v. Borche, 109 Tenn. 398, 402, 71 S. W. 50, but there are several older cases involving fraudulent conveyances of a stock of merchandise or other personalty where the property was attached but released on a reply bond to the fraudulent grantee, in which cases the following rule was applied:

The replevy bond, as distinguished from a replevin bond, is a substitute for the property attached, in the way of personal security, and releases it from the

lien of the attachment, and leaves it subject to be levied on, under other attachments or executions, though it was originally attached upon the ground of a fraudulent conveyance and was replevied by the fraudulent purchaser. Jacobi v. Schloss, 47 Tenn. 385; Barry v. Frayser, 57 Tenn. 206, 217; Frankle v. Douglas, 69 Tenn. 476.

In those cases judgment was entered against the principal and sureties on the replevy bond in accordance with the statute Code Sections 9465 and 9487 either for the debt, interest and costs or for the value of the property, according to the condition of the bond as made by the grantee under Section 9460.

It is obvious from the statute, from these cases and those cited in the forepart hereof, and from the following cases that the Court is not empowered to enter any other form of judgment on the bond than the two forms alternately provided by the statute and as called for by the contract expressed in the bond.

■■■ The obligors on a replevy bond are bound to surrender the property and cannot set up a lien in their favor or title in themselves or some third party to defeat their obligation under the bond. Central Trust Co. v. Evans, 6 Cir., 73 F. 562, 19 C. C. A. 563, citing Cheatham v. Galloway, 54 Tenn. 678; Stephens v. Greene County Iron Co., 58 Tenn. 71; Smyth v. Barbee, 77 Tenn. 173.

Since conveyances in violation of the Bulk Sales Law are but another form of fraudulent conveyances, the foregoing principles must be controlling in the instant suit.

■■■ The net result is that the defendants Perryman and Hamilton, having elected to replevy the attached property on giving bond with sureties conditioned to pay the judgment, interest and costs, have substituted their personal liability for the property and are subject to judgment accordingly and they cannot set up as a defense

the fact that if they had not given bond, they would have been entitled to claim their pro rata in the property attached.

We are therefore of opinion that we were in error in not entering judgment on the replevy bond for the full amount of the judgment, interest and costs adjudged against Keathley, but within the penalty of the bond. Necessarily the judgment would go against the sureties as well as against the principals.

The original opinion and decree is modified accordingly and the order remanding the cause and ordering a reference is recalled.

Decree in this Court in accordance with the foregoing.

Anderson, P. J., and Baptist, J., concur.

### On Petition for Instructions

SWEPSTON, J. Counsel for the judgment creditor in this case and the Clerk of the Court of Appeals have requested the opinion of the Court as to when execution is properly issuable.

Counsel have called attention to the inconsistency between Code Sections 8867 and 10627 and to the change in the language of 8867 wrought by the 1950 Code Supplement enacted by the 1951 General Assembly.

Section 8867 authorizes and directs the Clerk of the Supreme Court and the Court of Appeals to issue execution, etc. after the expiration of the ten days allowed for filing a petition to rehear after final judgment rendered.

Section 10627 provides for execution after *thirty days* after final decree as defined in the act creating the Court of Appeals, chapter 100, Acts 1925.

The 1950 supplement deletes the Clerk of the Court of Appeals from Section 8867, making it apply only to the Clerk of the Supreme Court.

Since by Section 26.1 of the 1950 Supplement its provisions do not become effective until January 1, 1952, it has no direct effectiveness until that date, although it may be indicative of the proper answer now.

Thus the rule remains as heretofore. What then is the correct rule—10 days or 30 days?

Before the enactment of the 1932 Code it was held in two cases that the correct rule is 30 days. Red Top Cab Co. v. Garside, 1927, 155 Tenn. 614, 298 S. W. 263; Scales v. James, 1928, 9 Tenn. App. 306.

In neither of these cases was reference made to the inconsistency between Code Section 4773a1, which now appears in the 1932 Code as 8867, and the Act creating the Court of Appeals; obviously, it was not necessary, because the later irreconcilably inconsistent statute effected a repeal by implication of that part of the Shannon's Code section, on well known principles.

Yet the inclusion by the 1932 Code of the Clerk of the Court of Appeals in the language of Section 8867 now raises the question.

Section 8867 of the present Code is taken without substantial change from chapter 58, Acts 1903; Section 10627 was taken without substantial change from chapter 100, Acts 1925.

The rule under such circumstances is that the Code embodied these Acts as they had been previously construed. Memphis and Shelby County Bar Ass'n v. Himmelstein, 165 Tenn. 102, 103, 53 S. W. (2d) 378.

We conclude therefore, that execution or other final process may not properly issue on a judgment or decree of this Court until the lapse of 30 days after final disposition, including action on the petition to rehear, as in Scales v. James, supra.

Anderson, P. J., and Baptist, J., concur.