PER CURIAM.
Andinaria Nelson and her husband, Tar-rance Nelson, appeal from a summary judgment in favor of Federal National Mortgage Association (“Fannie Mae”) in an ejectment action. We vacate the judgment and dismiss the appeal.

Facts and Procedural History

On October 8, 2007, Mrs. Nelson, in consideration for a loan of $114,000 from Global Lending Group, Inc. (“Global”), executed a promissory note agreeing to repay Global in monthly installments over a 30-year period. On the same day, Mr. and Mrs. Nelson executed a mortgage to Mortgage Electronic Registration Systems, Inc. (“MERS”), acting solely “as a nominee for [Global] and [Global’s] successors and assigns.” Also on the same day, Mrs. Nelson signed a document acknowledging that she had received a “Notice of Assignment, Sale, or Transfer of Servicing Rights,” in *772 forming her that “the servicing of [her] mortgage loan, that is, the right to collect payments from [her], [would be] assigned, sold, or transferred from [Global] to Flags-tar Bank, FSB, effective December 1, 2007.”
The Nelsons failed to make the payments due on the mortgage indebtedness and Flagstar Bank, FSB (“Flagstar”), sent them notices of default on January 17, March 18, and May 17, 2008, along with loss-mitigation pamphlets entitled “How to Avoid Foreclosure.” The Nelsons responded with information regarding their financial status. On August 28, 2008, an attorney retained by MERS notified the Nelsons via a mailed letter that Flagstar was accelerating the maturity date of the loan and initiating foreclosure proceedings, with a foreclosure sale scheduled for October 2, 2008. Newspaper notices published on September 6, September 13, and September 20, 2008, stated, in pertinent part:
“Default having been made in the payment of the indebtedness secured by that certain mortgage executed by [the Nelsons] to [MERS], solely as nominee for [Global] on the 8th day of October, 2007, said mortgage having been recorded in the office of the Judge of Probate of Jefferson County, Alabama, in Book: LR 200765, page 7255 and re-recorded in LR 200765, page 17347; said mortgage having subsequently been trans-femd and assigned to [MERS], solely as nominee for [Flagstar], the undersigned [MERS], solely as nominee for [Flagstar], as mortgagee/transferee, under and by virtue of the power of sale contained in said mortgage, will sell at public outcry to the highest bidder for cash, in front of the main entrance of the Courthouse at Birmingham, Jefferson County, Alabama, [property description]....” (Emphasis added.) Before the third notice was published, Flagstar entered into a forbearance agreement with the Nelsons, reducing their mortgage interest rate from 7.5% to 5% and setting up a modified payment plan to allow them to bring their loan to a current status.
By March 2009, the Nelsons were again in default on their obligations under the note and mortgage. On March 17, 2009, Flagstar sent the Nelsons a notice of default and a loss-mitigation pamphlet. Mrs. Nelson provided Flagstar with the information it requested in order to consider her for a loss-mitigation program. On June 5, 2009, an attorney retained by MERS notified the Nelsons via a mailed letter that Flagstar was accelerating the maturity date of the loan and initiating foreclosure proceedings, with a foreclosure sale scheduled for July 27, 2009. Newspaper notices were published on June 6, June 13, and June 20, 2009. In early July 2009, however, the Nelsons were approved for a trial Home Affordable Modification Plan (“HAMP”), and the Nelsons signed a HAMP agreement requiring them to make three consecutive reduced payments in a timely manner. On September 21, 2009, a notice postponing the foreclosure sale to November 23, 2009, was published. On September 22, 2009, Flagstar sent the Nelsons a notice of default, again attaching loss-mitigation information. On November 23, 2009, an attorney for MERS informed the Nelsons that the foreclosure sale was being postponed until January 25, 2010, under the same terms as set forth in the previous foreclosure-sale notices. On November 28, 2009, a notice postponing the foreclosure sale to January 25, 2010, was published in the Alabama Messenger.
On January 25, 2010, MERS, as nominee for Flagstar, conducted a foreclosure sale of the Nelsons’ property. MERS purchased the property and received a fore *773 closure deed. On January 27, 2010, MERS conveyed its interest in the property to Fannie Mae by special warranty deed. The deed was recorded in the Jefferson Probate Office on February 15, 2010.
On February 5, 2010, Fannie Mae filed a complaint alleging that it was the owner of the property by virtue of its special warranty deed from MERS and seeking to eject the Nelsons from the property. The Nelsons answered, denied the material allegations of the complaint, and asserted the affirmative defense that the foreclosure deed was void and that Fannie Mae had no right to eject them from the property because, they claimed, the foreclosure was “wrongful.”[1] Following discovery, Fannie Mae moved for a summary judgment. In support of that motion, Fannie Mae submitted copies of the note, the mortgage, the foreclosure deed to MERS, its own special warranty deed from MERS, and the affidavit of Sharon Morgan, an assistant vice president of Flags-tar. Morgan stated that she had reviewed Flagstar’s records concerning the Nelsons’ loan and that she had personal knowledge of the facts set forth in her affidavit. Morgan authenticated the pertinent documents, including the note, the mortgage, the “Notice of Assignment, Sale, or Transfer of Servicing Rights [from Global to Flagstar],” the series of loss-mitigation documents that Flagstar and the Nelsons had exchanged, the notice-of-default letters that Flagstar had mailed to the Nelsons, and the notice-of-acceleration letters that attorneys for MERS had mailed to the Nelsons.
With respect to the promissory note that Mrs. Nelson had executed in favor of Global on October 8, 2007, Morgan authenticated Flagstar’s copy of the note, which had been stamped with the following undated special indorsement:
“Pay to The Order of Flagstar Bank, FSB Without Recourse Global Lending Group, Inc.
By: /s/ Janice Hopkins Loan Operations Associate”
The materials attached to Morgan’s affidavit did not include any assignment of the mortgage.
In response to Fannie Mae’s summary-judgment motion, the Nelsons presented their own affidavits and argued that MERS could convey to Fannie Mae only the interest in the property that MERS had, and, they contended, MERS had no interest in the property because its foreclosure deed was void; accordingly, they said, Fannie Mae did not have standing to seek possession of the property. The Nelsons based their contention that the foreclosure deed was void on the undisputed fact that there had been no assignment of the mortgage from the entity “MERS, as nominee for Global,” either to Flagstar or to the entity “MERS, as nominee for Flagstar,” and offered the following arguments: (1) that the power-of-sale provision in the mortgage instrument was unenforceable because the note and mortgage had been separated; (2) that MERS and the loan servicer, Flagstar, had breached the notice requirements in the mortgage instrument and had failed to follow the statutory notice requirements of § 35-10-13, Ala.Code 1975; and (3) that Flagstar *774 had failed to comply with its loss-mitigation program and had misrepresented that the foreclosure would not occur as long as Flagstar was working with the Nelsons to help them keep the property. Finally, the Nelsons argued that Fannie Mae’s summary-judgment motion was not supported by admissible evidence under Rule 56, Ala. R. Civ. P. Specifically, they contended that Morgan’s affidavit was not based on personal knowledge and was not accompanied by sworn or certified copies of the documents to which it referred.
Fannie Mae filed a reply to the Nelsons’ response, arguing that the Nelsons had contractually authorized MERS to foreclose on the property, in the event of their default, when they signed the mortgage instrument, which instrument contained the following provisions:
“Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender’s successors and assigns) and to the successors and assigns of MERS, with power of sale, [the Property].
“... Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender’s successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property.”
(Emphasis added.)
Following oral argument on the motion, the trial court entered a summary judgment in favor of Fannie Mae on January 18, 2011, setting out the reasons for its decision. The trial court’s determination can be summed up by the following excerpt from its judgment:
“[Mrs.] Nelson admitted in her affidavit that she was sending payments to Flags-tar. [The Nelsons have] not submitted any evidence, let alone substantial evidence, to show that Flagstar was not the ‘successor or assign’ of the ‘lender’ as defined in the mortgage. An assignment of mortgage from MERS to Flags-tar was unnecessary for MERS to proceed with the foreclosure on behalf of Flagstar under the power of sale in the mortgage. All that was required was that Flagstar be entitled to the debt secured by the mortgage as the successor or assign of the ‘lender.’ ”
The Nelsons filed a motion to alter, amend, or vacate the judgment on February 17, 2011. Fannie Mae filed a response to the Nelsons’ postjudgment motion, reiterating an argument made earlier in its summary-judgment motion that it was not subject to the defenses asserted by the Nelsons because it was a bona fide purchaser for value, without notice of any claim or defense the Nelsons may have had. The trial court denied the post-judgment motion on April 18, 2011, after which the Nelsons timely appealed. The supreme court subsequently transferred the appeal to this court pursuant to Ala. Code 1975, § 12-2-7(6).

Standard of Review

Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (AIa.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (AIa.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s *775 prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d).

Discussion

I.
The Nelsons argue that the power-of-sale provision in the mortgage instrument was unenforceable because the note and mortgage had been separated. This court has recently rejected that argument because it does not comport with Alabama law. See Coleman v. BAC Servicing, [Ms.2100453, February 3, 2012] (Ala.Civ.App.2012); Perry v. Federal Nat’l Mortg. Ass’n, [Ms. 2100235, March 9, 2012] (Ala.Civ.App.2012).*
“This once-novel theory of mortgage law has been consistently rejected by courts which have considered its merit. See, e.g., Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1044 (9th Cir.2011) (‘[T]he plaintiffs advance a novel theory of wrongful foreclosure. They contend that all transfers of the interests in the home loans within the MERS system are invalid because the designation of MERS as a beneficiary is a sham and the system splits the deed from the note, and, thus, no party is in a position to foreclose.’); Kiah v. Aurora Loan Servs., LLC, [(No. 10-40161-FDS)] (D.Mass. Mar. 4, 2011) [(not published in F.Supp.2d) ] (‘Plaintiffs theory that the note and the mortgage somehow became disconnected from one another, and that the mortgage should disappear as a result, is ... not tenable as a matter of law.’).”
Kirby v. Bank of America, N.A., (No. 2:09-CV-182-DCB-JMR, March 29, 2012) (S.D.Miss.2012) (footnote omitted; not published in F.Supp.2d). “Although the separation of the note and the [mortgage] does not render either instrument void, it does create a substantial question of what entity has the right to foreclose when the borrower defaults on the loan,” Morgan v. Ocwen Loan Servicing, LLC, 795 F.Supp.2d 1370, 1375 (N.D.Ga.2011), as will be evident from our discussion in Part II.
II.
The Nelsons insist, because the mortgage was never assigned to Flagstar, or to the entity “MERS, as nominee for Flags-tar,” that MERS, as nominee for Flagstar, had no authority to exercise the power of sale in the mortgage. Fannie Mae maintains that, by executing the mortgage in favor of MERS, as nominee for the lender and the “lender’s successors and assigns,” the Nelsons granted MERS the authority to foreclose the mortgage as nominee for Flagstar because, Fannie Mae contends, Flagstar was Global’s “assignee.”
There is no dispute that Global assigned, sold, or transferred to Flagstar the right to service the Nelsons’ loan, effective December 1, 2007. The Nelsons received a “Notice of Assignment, Sale, or Transfer of Servicing Rights,” informing them that “the servicing of [their] mortgage loan, that is, the right to collect payments from *776 [them, was] being assigned, sold, or transferred ... to [Flagstar], effective December 1, 2007.” (Emphasis added.) As the notice correctly informed the Nelsons, a loan servicer has the right to collect payments on behalf of the owner of the debt and to disburse those payments, minus any applicable commission or fee, to the owner of the debt. See generally Adam J. Levitin & Tara Twomey, Mortgage Servicing, 28 Yale J. on Reg. 1 (2011).
There is also no dispute that at some point Flagstar became the holder of the note. This court has recently held that a foreclosing entity that, before it initiates foreclosure proceedings, obtains a note secured by a mortgage and becomes the holder of the note may execute the power of sale in the mortgage by virtue of § 35-10-12, Ala.Code, 1975. See Perry v. Federal Nat’l Mortg. Ass’n, — So.3d at —.** Section 35-10-12 provides, in per tinent part, that
“[w]here a power to sell lands is given in any mortgage, the power is part of the security and may be executed by any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured.”
(Emphasis added.) In Perry, this court quoted Harton v. Little, 176 Ala. 267, 270, 57 So. 851, 851 (1911), as standing for the proposition that “ ‘[i]t is not at all necessary that a mortgage deed be assigned in order to enable the owner of the debt to foreclose under a power of sale.’ ” — So.3d at — (emphasis added).*** Based on Perry and Harton, it is clear that, under Alabama law, the “person who ... becomes entitled to the money ... secured [by a mortgage],” § 35-10-12, and who is thereby authorized to execute the power of sale in the mortgage, is the owner of the debt, not one who is a mere collecting agent for the owner of the debt.
“[T]he benefits of specialization [in the modern home-mortgage market] have resulted in an almost complete bifurcation of the duties of administration (referred to as loan servicing) from the benefits of ownership. Loan servicing generally is performed by separate companies that are paid by fees deducted from payments on the notes, and that ordinarily have little or no ownership interest in the notes in question. Thus, [often] the party to whom the homeowner is obligated to make payments no longer owns the document.”
Ronald J. Mann, Searching for Negotiability in Payment and Credit Systems, 44 UCLA L.Rev. 951, 970 (1997) (footnote omitted).
Our research has disclosed only two instances in which a loan servicer who was neither the assignee of the mortgage nor the holder of the note was permitted to initiate foreclose proceedings: when the servicer’s invocation of the power of sale was authorized by the loan documents or permitted by statute. See Hoverman v. CitiMortgage, Inc., (No. 2:11-CV-00118-DAK, August 4, 2011) (D.Utah 2011) (not published in F.Supp.2d) (approving the initiation of foreclosure proceedings by Citi-mortgage (“Citi”), a loan servicer who had *777 invoked the power of sale as the “lender,” despite the fact that Citi was neither the assignee of the mortgage nor the holder of the note, because “the term ‘Lender’ is a defined term in the documents and ... ‘Lender’ is defined to be Citi. The documents do not add any additional requirements for Citi to qualify as the Lender for purposes of the documents, such as being the actual source of the funding. Therefore, for purposes of the Note and Trust Deed in question, Citi is the Lender and is subject to all of the obligations and is authorized to perform all of the actions of the Lender under the terms of the contracts.”); and Jarbo v. BAG Home Loan Servicing, (No. 10-12632, December 15, 2010) (E.D.Mich.2010) (not published in F.Supp.2d) (rejecting claim that loan servi-cer lacked authority to foreclose on property because the note and mortgage “contained provisions authorizing the lender or servicer, or an assign of either, to invoke the power of sale,” and because Mich. Comp. Laws Ann. § 600.3204(a) permitted foreclosure by “ ‘the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage’ ”) (emphasis omitted).
It is unclear whether Fannie Mae’s argument to the trial court — that Flags-tar’s status as the lender’s “assignee” authorized Flagstar to invoke the power of sale in the mortgage — was based upon the assumption (a) that the assignment to Flagstar of servicing rights alone — without a transfer of the debt — sufficed to permit Flagstar to execute the power of sale, or (b) that the transfer to Flagstar of the servicing rights, effective December 1, 2007, included a transfer of the note on December 1, 2007. In support of its summary-judgment motion, Fannie Mae presented Flagstar’s copy of the note that Mrs. Nelson had executed to Global on October 8, 2007. The note contained an undated special indorsement by Global to Flagstar. Fannie Mae, however, presented no evidence indicating that the transfer of servicing rights to Flagstar, effective December 1, 2007, also included the transfer of the note to Flagstar. As the mortgage instrument in the present case makes clear, a transfer of servicing rights to a loan may, but does not necessarily, include a transfer of the note evidencing the debt. Paragraph 20 of mortgage states:
“Sale of Note; Change of Loan Servicer; Notice of Grievance. The note or a partial interest in the note (together with this security instrument) can be sold one or more times without prior notice to borrower. A sale might result in a change in the entity (known as the ‘Loan Servicer’) that collects periodic payments due under the note and this security instrument and performs other mortgage loan servicing obligations under the note, this security instrument, and applicable law. There also might be one or more changes of the Loan Servi-cer unrelated to a sale of the note. If there is a change of the Loan Servicer, borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information [the Real Estate Settlement Procedure Act (RESPA) ] requires in connection with a notice of transfer of servicing. If the note is sold and thereafter the loan is serviced by a Loan Servicer other than the purchaser of the note, the mortgage loan servicing obligations to borrower will remain with the Loan Servicer or be transferred to a successor Loan Ser-vicer and are not assumed by the note purchaser unless otherwise provided by the note purchaser.”
(Emphasis added.) If Fannie Mae’s argument that Flagstar was Global’s assignee *778 is not based on the assumption that the transfer of servicing rights also included a transfer of the note but is, instead, based on some other theory — for example, that Global’s transfer of servicing rights constituted Global’s appointment of Flagstar as its agent, not only for the purpose of collecting payments on behalf of Global as holder of the note but also for the purpose of foreclosing in the event of default — then such agency agreement should have been, but was not, included in the materials submitted in support of Fannie Mae’s summary-judgment motion. Compare Larota-Florez v. Goldman Sachs Mortg. Co., 719 F.Supp.2d 636, 639 (E.D.Va.2010) (holding that loan servicer of note owned by Freddie Mac was entitled to appoint a substitute mortgagee to foreclose in the event of mortgagor’s default, and that substitute mortgagee’s appointment was evidenced by a recorded “Appointment of Substitute Trustee dated July 15, 2009”).
In the trial court, Fannie Mae did not argue that MERS, as nominee for Flagstar, was entitled to execute the power of sale in the mortgage as a consequence of Flagstar’s status as the holder of the note. Likewise, the Nelsons raised no argument in the trial court and they do not argue on appeal that Fannie Mae failed to establish that Flagstar was the holder of the note before June 5, 2009, when MERS, as nominee for Flagstar, initiated the foreclosure proceedings. In its appellate brief, however, Fannie Mae argues that the note is a negotiable instrument that was transferred by possession, thereby, it says, entitling Flagstar to the money secured by the Nelsons’ mortgage (and, by implication, authorizing Flagstar, or MERS as nominee for Flagstar, to execute the power of sale). In response to that argument, the Nelsons contend in their reply brief that the note was nonnegotiable because it did not represent “an unconditional promise ... to pay a fixed amount of money.” See § 7-3-104, Ala.Code 1975.
The Nelsons maintain that the following provision in the note requires an undertaking other than the payment of money: “[The mortgage] instrument describes how and under what conditions I may be required to make immediate payment in full of all I owe under this note.” The Nelsons argue that because the note requires that the mortgage instrument be consulted to determine how and under what conditions they would be required to make immediate payment in full of all amounts they owed under the note, the note fails the test of negotiability set out in § 7-3-104(a)(3), Ala.Code 1975: that the note “[d]oes not state any other undertaking or instruction by the person promising ... payment to do any act in addition to the payment of money.” That argument is not well taken. The mortgage need not be consulted to determine the conditions under which acceleration of the indebtedness can occur. Paragraph 6(C) of the note contains the same provision:
“If I am in default, the note holder may send me a notice telling me that if I do not pay the overdue amount by a certain date, the note holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.”
See also First Nat’l Bank of Birmingham v. De Jernett, 229 Ala. 564, 568,159 So. 73, 76 (1935) (“We are fully persuaded that there is nothing in the appellee’s contention that the acceleration clause destroyed the negotiability of the note, if otherwise negotiable.... And we are equally convinced that there is no merit in appellee’s contention that the negotiability of the note was destroyed by its reference to the *779 mortgage.... ”); Third Nat’l Bank of Nashville v. Keathley, 35 Tenn.App. 82, 92, 242 S.W.2d 760, 764 (1951) (holding that “negotiability is not destroyed by ... an acceleration of maturity of installment payments by some act of the maker nor ... by a mere reference in the note to a conditional sales contract, mortgage or other collateral security instrument, where the note does not incorporate the terms of the collateral instrument into the note such as by the expression ‘subject to the terms of the collateral instrument”).
Despite the failure of the parties to have clearly identified the crucial issue in the trial court — whether Flagstar was the holder of the note before MERS, as nominee for Flagstar, initiated the foreclosure proceedings — this court is “ ‘ “ ‘duty bound to notice ex mero motu [an issue that indicates] the absence of subject-matter jurisdiction.””” See Sturdivant v. BAC Home Loans Servicing, LP, [Ms. 2100245, December 16, 2011] — So.3d —, — (Ala.Civ.App.2011) (quoting Riley v. Hughes, 17 So.3d 643, 648 (Ala.2009), quoting in turn Baldwin Cnty. v. Bay Minette, 854 So.2d 42, 45 (Ala.2003), quoting in turn Stamps v. Jefferson Cnty. Bd. of Educ., 642 So.2d 941, 945 n. 2 (Ala.1994)).
“ ‘When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.’ State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). The issue of a lack of standing may not be waived, and an argument concerning standing may be asserted for the first time on appeal. RLI Ins. Co. v. MLK Ave. Redev. Corp., 925 So.2d 914, 918 (Ala.2005). In fact, in an appeal from a judgment in an ejectment action, our supreme court, on its own motion, has vacated the judgment ejecting the mortgagor when the evidence demonstrated that the plaintiff did not have legal title to the property at issue and, therefore, lacked standing to bring the action. See Cadle Co. v. Shabani, [950 So.2d 277 (Ala.2006) ]. Accordingly, we address the issue whether [Fannie Mae] had standing to bring the ejectment action.”
Sturdivant, — So.3d at -.
“In order to maintain an action for ejectment, a plaintiff must allege either possession or legal title.” Cadle Co. v. Shabani, 950 So.2d 277, 279 (Ala.2006). The Nelsons challenged Fannie Mae’s assertion that it held legal title to the property on the basis that the deed of Fannie Mae’s grantor — MERS, as nominee for Flagstar — was void because Flagstar had not been assigned the mortgage when MERS, as nominee for Flagstar, initiated the foreclosure proceedings. That argument has no merit in light of § 35-10-12, which authorizes “any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured” to execute the power of sale in a mortgage. Our caselaw interpreting § 35-10-12 holds that the owner of the debt may foreclose on property that is the subject of a mortgage securing that debt if the owner is the holder of the promissory note at the time the owner initiates foreclosure proceedings. See Coleman v. BAC Servicing, supra; Perry v. Federal Nat’l Mortg. Ass’n, supra † Fannie Mae presented no evi *780 dence indicating that, at the time MERS, as nominee for Flagstar, initiated the foreclosure proceedings, Flagstar was the holder of the note.[2]
The complete absence of any evidence indicating that Flagstar was the owner of the debt, i.e., the holder of the note, before June 5, 2009, when MERS, as nominee for Flagstar, invoked the power of sale in the mortgage means that MERS did not convey legal title to itself by virtue of the foreclosure deed because MERS had no authority to initiate the foreclosure proceedings. Consequently, the special warranty deed that Fannie Mae received from MERS two days after the foreclosure sale, which depended for its efficacy upon the validity of the MERS foreclosure deed, see 11 Thompson on Real Property § 94.07(b)(2)(I) at 390 (David A. Thomas 2d ed.2002), was also void. Accordingly, Fannie Mae did not have standing to bring the ejectment action.
As this court stated in Sturdivant, supra:
“A judgment entered in an action commenced by a party lacking standing is a nullity. Vann v. Cook, 989 So.2d 556, 559 (Ala.Civ.App.2008); see also Blevins v. Hillwood Office Ctr. Owners’ Ass’n, 51 So.3d 317, 321 (Ala.2010) (same). Because [the ejectment plaintiff] lacked standing to bring the ejectment action, the trial court never acquired subject-matter jurisdiction over this dispute. Accordingly, the summary judgment is void and is hereby vacated. Blevins, 51 So.3d at 321; and Cadle Co., 950 So.2d at 280. Additionally, because a void judgment will not support an appeal, Gallagher Bassett Servs., Inc. v. Phillips, 991 So.2d 697, 701 (Ala.2008), this appeal must be dismissed for lack of subject-matter jurisdiction. Blevins, 51 So.3d at 323.”
Based on the foregoing authorities, the judgment of the Jefferson Circuit Court is vacated and the appeal is dismissed.
JUDGMENT VACATED; APPEAL DISMISSED.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
PITTMAN, J., dissents, with writing, which BRYAN, J., joins.

. In Jackson v. Wells Fargo Bank, N.A., 90 So.3d 168 (Ala.2012), our supreme court held that Alabama recognizes a claim for "wrongful foreclosure” only when the foreclosing entity “ ‘uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.' ” (Quoting Reeves Cedarhurst Dev. Corp. v. First American Fed. Sav. & Loan Ass'n, 607 So.2d 180, 182 (Ala.1992).)

 Note from the reporter of decisions: On June 22, 2012, the Alabama Court of Civil Appeals withdrew the February 3, 2012, opinion in Coleman and substituted another one. See Coleman v. BAC Servicing, [Ms. 2100453, June 22, 2012] - So.3d -(Ala.Civ.App.2012). On June 29, 2012, the Alabama Court of Civil Appeals withdrew the March 9, 2012, opinion in Perry and substituted another one. See Perry v. Federal Nat’l Mortg. Ass’n, [Ms. 2100235, June 29, 2012]-So.3d -(Ala.Civ.App.2012).

 Note from the reporter of decisions: On June 29, 2012, the Alabama Court of Civil Appeals withdrew the March 9, 2012, opinion in Perry and substituted another one. See Perry v. Federal Nat’l Mortg. Ass'n, [Ms. 2100235, June 29, 2012] - So.3d - (Ala.Civ.App.2012).

 from the reporter of decisions: On June 29, 2012, the Alabama Court of Civil Appeals withdrew its March 9, 2012, opinion in Perry and substituted another one. The substituted opinion contains the quoted language. See Perry v. Federal Nat'l Mortg. Ass’n, [Ms. 2100235, June 29, 2012]- So.3d -, -(Ala.Civ.App.2012).

 Note from the reporter of decisions: On June 22, 2012, the Alabama Court of Civil Appeals withdrew the February 3, 2012, opinion in Coleman and substituted another one. See Coleman v. BAC Servicing, [Ms. 2100453, June 22, 2012] - So.3d - (Ala.Civ.App.2012).
On June 29, 2012, the Alabama Court of Civil Appeals withdrew the March 9, 2012, opinion in Berry and substituted another one. See Perry v. Federal Nat’l Mortg. Ass’n, [Ms. 2100235, June 29, 2012] - So.3d - (Ala.Civ.App.2012).

. The absence of evidence as to when Flagstar obtained the note from Global distinguishes the present case from our recent decision in Byrd v. MorEquity, Inc., 94 So.3d 378 (Ala. Civ.App.2012), in which the ejectment plaintiff presented conflicting evidence as to whether it had been assigned the mortgage at the time it initiated the foreclosure proceedings.