WOODALL, Justice.
 

 Jerry M. Blevins (“Jerry”) and Carol A. Blevins (“Carol”), husband and wife, appeal from a summary judgment in favor of the Hillwood Office Center Owners’ Association, Inc. (“the HOCOA”), and Russ Chandler, Mark Mullins, Jerry Mitchell, Mike Underwood, Buddy Rousso, and Charles Henson, members of the board of directors of the HOCOA. We vacate the judgment, dismiss the appeal, and dismiss the action.
 

 I. Factual Background
 

 On March 29, 2005, Carol purchased Unit 200-3, Building 200, Phase I (“the unit”), of Hillwood Office Center, a condominium office complex (“the complex”). By quitclaim deed dated May 15, 2005, Carol purported to transfer her interest to Jerry. However, the deed was witnessed solely by Jerry. Moreover, the deed was never recorded in the office of the Montgomery Probate Court, and no copy was presented to the HOCOA. In that connection, Article IX.D.2. of the HOCOA’s declaration of condominium (“the DOC”) provides:
 

 
 *319
 
 “Change of membership in the [HO-COA] shall be established by the
 
 recording in the Probate Court records of Montgomery County, Alabama, of a deed or other instrument establishing record title to a unit, and upon delivery to [the HOCOA] of a certified copy of such instrument,
 
 the owner designated by such instrument thereby becomes a member of [the HOCOA], and the membership of the prior owner shall be thereby terminated.”
 

 (Emphasis added.)
 

 By April 15, 2005, Jerry had begun operating a law practice in the unit. He planted shrubbery in front of the unit at a cost of approximately $800. However, the shrubbery wilted and died from lack of water. He then replanted the shrubbery, at a cost of another $300. When Jerry inquired as to why the in-ground sprinkler system at the complex was never activated, Charles Henson, the owner of another unit in the complex, told him that the sprinkler system had not been operational for several years.
 

 In that connection, Jerry also learned that the HOCOA had not held annual meetings in several years and that it had no board of directors. According to Jerry’s affidavit submitted in opposition to the defendants’ summary-judgment motion, he then instigated a meeting of purported unit owners for the purpose of selecting a board of directors. At the meeting, the owners elected a board of directors, of which Jerry was a member and president. He served in that capacity for the next three years.
 

 During that time, the sprinkler system was repaired. It could be activated by anyone from an unlocked control panel located at the rear of the complex. While he was serving as president of the board of directors, Jerry activated the sprinkler system at his discretion. However, he was the only one to do so, and he did so over the objections of Chandler, Mitchell, Underwood, and Henson. Their objections centered on the costs incurred by the HO-COA for the water usage.
 

 Jerry resigned from the board of directors and the presidency in June 2008. In July 2008, the HOCOA elected a new board of directors, including Chandler, Mullins, Mitchell, Underwood, Rousso, and Henson. Mullins was elected president.
 

 On August 10, 2008, Jerry activated the sprinkler system. The next day, Jerry discovered that a lock had been installed on the box containing the control panel for the sprinkler system. The discovery prompted a flurry of e-mails that same day from Jerry to Chandler and other members of the HOCOA’s board of directors.
 

 At 11:56 a.m., Jerry wrote to Chandler in an e-mail: “Until such time as I am provided with a key to the lock on the sprinkler controller box, I would appreciate you ensuring that the lock is immediately removed. Otherwise, I shall have no recourse but to cut it off.” At 1:39 p.m., Chandler sent Jerry the following e-mail:
 

 “I forwarded your earlier request to the board. If you can show me in the bylaws where every association member is entitled to a key to the sprinkler system, I will forward the same information to the board. We want to ensure that we do everything correctly. The only people with a key will be the president and the lawn maintenance contractor. If you remove the lock, you will be responsible for the damage thereto. We as officers and board members are responsible for the common property areas, not condo owners.”
 

 At 2:55 p.m., Jerry sent Chandler the following e-mail:
 

 “I suggest you provide me with a key to the sprinkler box, or remove the lock by
 
 *320
 
 the end of the day today, or
 
 the lock will be cut off tomorrow morning. I’ll turn the sprinklers on as I see fit
 
 in light of the fact that the board is allowing the grass to die presently.”
 

 (Emphasis added.)
 

 Jerry then sent an e-mail to the board of directors, at 2:44 that same afternoon, in which he stated:
 

 “[Chandler] has advised me on several occasions today that the lock on the sprinkler control box will not be removed, nor will I be provided with a key to the lock. The grass around my office is dying as are the bushes that I paid for and installed. This is to be expected in light of the fact that it has not rained for over a week nor have the sprinklers been run during this time.
 

 “In light of the new course the ‘board’ has chosen to take, I advised [Chandler] on this date that in my opinion, the corporate entity known as Hillwood Office Center Owners’ Association, Inc., no longer legally exists. The corporation has not substantially complied with the laws pertaining to corporate existence since inception; therefore, I have decided not to recognize the ‘board’s’ authority on any matters. Accordingly, I hereby demand that each of you take appropriate action to either remove the lock from the sprinkler control box, or provide me with a key to the same, or I shall have no recourse but to take appropriate action to hold each and every one of you liable for the
 
 intentional interference with my rights as owner of my office unit.
 
 You have until the close of business on tomorrow to act on this demand.
 

 “In addition, until such time as the deficiencies with HOCOA’s corporate existence are remedied, I have no intention of adhering to any rule, regulation, or directive from the ‘board’ of a defunct corporation.”
 

 (Emphasis added.)
 

 When Jerry subsequently found the control box still locked, he broke off the lock and activated the sprinkler system. However, when he next attempted to activate the system, he discovered another lock on the control box. He broke off the second lock. This procedure was repeated over the succeeding weeks until Jerry had broken
 
 four locks
 
 on the control panel. Finally, Chandler removed the entire control panel and placed it under his exclusive control. As a result, Jerry had to water the shrubbery in front of the unit manually with a garden hose. He unsuccessfully sought access to the HOCOA’s corporate records in connection with his contention that it had not sufficiently complied with laws respecting the HOCOA’s corporate existence.
 

 On September 29, 2008, Jerry sued the HOCOA, as well as Chandler, Mullins, Mitchell, Underwood, Rousso, Henson, and others (hereinafter referred to collectively as “Hillwood”). His complaint sought a declaratory judgment and contained claims alleging (1) nuisance, (2) breach of fiduciary duty, (3) conspiracy, (4) specific performance, and (5) conversion. He sought a judgment declaring, among other things, that the HOCOA did not “legally exist due to [its] failure to comply with the formal requirements of corporate existence” and ordering Hillwood to allow him “immediate access” to various records of the HOCOA. His nuisance count averred that Hillwood “had a duty not to expose [Jerry] to anything that works hurt, discomfort, annoyance, inconvenience, or damage,” and that it breached that duty by “intentionally having the sprinkler controller box locked, and then eventually removed it from the common area location at [the complex] to prevent
 
 *321
 
 [Jerry] from watering the grounds, resulting in harm to the landscaping around [Jerry’s] office unit.” According to the complaint, Hillwood converted the sprinkler-control panel by locking it and eventually removing it from the common area. Finally, Jerry averred that Hillwood had breached a fiduciary duty owed to him by, among other things, “locking the sprinkler controller box, and eventually having [it] removed to prevent [Jerry] from watering the grounds,” and “refusing [his] repeated requests for access to the HOCOA’s [records].”
 

 On October 31, 2008, Hillwood filed a “motion to dismiss and counterclaim,” challenging, among other things, Jerry’s standing to sue. More specifically, it asserted that
 
 Carol
 
 was the record owner of the unit and, therefore, that
 
 Jerry “lack[ed] standing
 
 to bring any claims regarding the duties and obligations of the [HOCOA] and/or its board of directors.” (Emphasis added.) Hillwood also asserted a counterclaim alleging trespass, by which it sought compensatory and punitive damages. The trespass count alleged that Jerry “lack[ed] any right to access the control box for the sprinkler system” at the complex and that, “without legal authority,” he had “purposeful, intentionally, and repeatedly caused damage to the control box.” Additionally, Hillwood sought a judgment declaring that, among other things, Jerry has no right to access, use, or control the sprinkler system at the complex and had no right to break into the control panel. Hill-wood also sought a judgment “enjoin[ing] [Jerry] from damaging, tampering with, or in any way attempting to use the sprinkler system and/or its control box.”
 

 In December 2008, Jerry amended his complaint to add Carol as a plaintiff. Subsequently, Hillwood moved for a summary judgment on the Blevinses’ claims against it. The trial court granted Hillwood’s motion and certified the judgment as final, pursuant to Rule 54(b), Ala. R. Civ. P. The Blevinses appealed. On appeal, Hill-wood again raises the issue of standing.
 

 II. Discussion
 
 — Standing
 

 “ ‘When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.’ ”
 
 Riley v. Pate,
 
 3 So.3d 835, 838 (Ala.2008) (quoting
 
 State v. Property at 2018 Rainbow Drive,
 
 740 So.2d 1025, 1028 (Ala.1999)). “Standing is ‘ “ ‘[t]he requisite personal interest that must exist at the commencement of the litigation.’ ” ’ ”
 
 Cadle Co. v. Shabani,
 
 4 So.3d 460, 462-63 (Ala.2008) (emphasis added)(quoting
 
 Pharmacia Corp. v. Suggs,
 
 932 So.2d 95, 98 (Ala.2005), quoting in turn
 
 In re Allison G.,
 
 276 Conn. 146, 156, 883 A.2d 1226, 1231 (2005)). “The jurisdictional defect resulting from the plaintiffs lack of standing
 
 cannot be cured by amending the complaint to add a party having standing.” Cadle Co.,
 
 4 So.3d at 463 (emphasis added). Thus, according to Hillwood, if Jerry lacked standing to sue at the commencement of the action, the December 2008 amendment adding Carol as a plaintiff was a legal nullity. We agree.
 

 “ ‘ “To be a [person with standing], the person must have a real, tangible legal interest in the subject matter of the lawsuit.” ’ ”
 
 Ex parte Simpson,
 
 36 So.3d 15, 22 (Ala.2009) (quoting
 
 Ex parte Chemical Waste Mgmt., Inc.,
 
 929 So.2d 1007, 1010 (Ala.2005), quoting in turn
 
 Doremus v. Business Council of Alabama Workers’ Comp. Self-Insurers Fund,
 
 686 So.2d 252, 253 (Ala.1996)). The person asserting the claim must specifically allege an injury in fact to a “legally protected right.”
 
 Property at 2018 Rainbow Drive,
 
 740 So.2d at 1027 (emphasis omitted).
 

 Hillwood contends that the quitclaim deed purporting to transfer title to
 
 *322
 
 the unit from Carol to Jerry was ineffective, because, it argues, it was neither witnessed in accordance with Ala.Code 1975, § 35-4-20, and relevant caselaw nor recorded and filed as required by the DOC. Thus, according to Hillwood, the complaint was filed by a non-member of the HOCOA who, consequently, lacked standing to challenge the HOCOA’s existence and practices.
 

 The Blevinses do not dispute the factual basis for Hillwood’s argument. Indeed, they concede that Jerry
 
 “saw no need
 
 to record and file the deed with the HOCOA as dictated by HOCOA’s governing documents.” Blevinses’ brief, at 12 (emphasis added). The Blevinses’
 
 entire response
 
 to Hillwood’s jurisdictional challenge is found in their reply brief, as follows:
 

 “[I]t is indeed amusing that it was [Hill-wood] who first raised the issue of standing as it relates to [Jerry], and argued that [Jerry] had no right to complain about [Hillwood’s] misconduct, or to even bring this action, because [Jerry] had not technically complied with HOCOA’s governing documents with respect to his ownership interest in Suite 200-3. Now that the Blevinses have established [Hillwood’s] non-compliance with HOCOA’s governing documents as it pertains to the election of the ‘Board,’ [Hillwood] cartoonishly argue[s] that despite this non-compliance the ‘Board’ was lawful. [Hillwood] clearly want[s] to have [its] proverbial cake and eat it too.
 

 “In short, [Hillwood] cast the first stone about standing and compliance with HOCOA’s governing documents and now that the stone has boomeranged and landed square on their forehead, they want to conveniently disregard the governing documents.”
 

 Reply brief, at 11-12.
 

 This Court has often said that it is “ ‘ “duty bound to notice
 
 ex mero motu
 
 the
 
 absence
 
 of subject-matter jurisdiction.” ’ ”
 
 Riley v. Hughes,
 
 17 So.3d 643, 648 (Ala.2009) (emphasis added) (quoting
 
 Baldwin County v. Bay Minette,
 
 854 So.2d 42, 45 (Ala.2003), quoting in turn
 
 Stamps v. Jefferson County Bd. of Educ.,
 
 642 So.2d 941, 945 n. 2 (Ala.1994)). However, just because the Court is duty bound to notice the
 
 absence
 
 of subject-matter jurisdiction, it does not follow that it is so bound to construct theories and search the record for facts to
 
 support the existence
 
 of jurisdiction for plaintiffs who choose to stand mute in the face of a serious jurisdictional challenge. On the contrary,
 

 “when the parties have not provided sufficient legal or factual justification for this Court’s jurisdiction, this Court is
 
 not
 
 obligated to embark on its own expedition beyond the parties’ arguments in pursuit of a reason to
 
 exercise
 
 jurisdiction. The burden of establishing the
 
 existence
 
 of subject-matter jurisdiction falls on the party invoking that jurisdiction.
 
 See, e.g., Ex parte HealthSouth Corp.,
 
 974 So.2d 288 (Ala.2007) (setting forth the plaintiffs burden of demonstrating standing to bring an action, an issue of subject-matter jurisdiction); ...
 
 Ex parte Ray-El,
 
 911 So.2d 1100, 1104 (Ala.Crim.App.2004) (placing the burden to ‘ “justify the jurisdiction of this court” ’ on the person bringing a habeas petition as a ‘next friend’ (quoting
 
 Whitmore v. Arkansas,
 
 495 U.S. 149, 164, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)));
 
 cf. Bush v. Laggo Props., L.L.C.,
 
 784 So.2d 1063, 1065 (Ala.Civ.App.2000) (‘Once a party challenges the trial court’s jurisdiction, pursuant to Rule 12(b)(1), [Ala. R. Civ. P.,] the burden of establishing jurisdiction is on the plaintiff.’ (citing
 
 Menchaca v. Chrysler Credit Corp.,
 
 613 F.2d 507 (5th Cir.1980))).”
 

 Crutcher v. Williams,
 
 12 So.3d 631, 635-36 (Ala.2008) (some emphasis added).
 

 
 *323
 
 Essentially, the Blevinses do not dispute Hillwood’s contention that Jerry lacks standing to make the claims asserted in this action. Instead, the Blevinses merely characterize the contention as “amusing” and suggest no legal theory on which standing might be based. It is not this Court’s function to “embark on its own expedition,”
 
 Crutcher,
 
 12 So.3d at 635, in search of such a basis. Consequently, we hold that the Blevinses have not carried their burden of establishing subject-matter jurisdiction. This action, having begun at the instance of someone without standing, cannot now be
 
 maintained
 
 by someone with standing.
 
 Cadle Co.,
 
 4 So.3d at 463.
 

 III. Conclusion
 

 Because the trial court never acquired subject-matter jurisdiction over this dispute, its summary judgment was void and is hereby vacated. Also, because a void judgment will not support an appeal,
 
 Gallagher Bassett Servs., Inc. v. Phillips,
 
 991 So.2d 697, 701 (Ala.2008), this appeal and the action from which it arises, must be, and are, hereby dismissed for lack of subject-matter jurisdiction.
 

 JUDGMENT VACATED; APPEAL DISMISSED; AND CASE DISMISSED.
 

 COBB, C.J., and LYONS, SMITH, and SHAW, JJ., concur.
 

 PARKER, J., recuses himself.