WOODALL, Justice.
The Boys & Girls Clubs of South Alabama, Inc. (“the Club”), a nonprofit corporation, appeals from a judgment in favor of the Fairhope-Point Clear Rotary Youth Programs, Inc. (“Rotary Inc.”), and the Ruff Wilson Youth Organization, Inc. (“Wilson Inc.”), in their action against the Club seeking declaratory and injunctive relief. We vacate the judgment and dismiss the case and the appeal.

I. Factual and Procedural Background

The dispositive facts are undisputed. The Club, which was incorporated in 1958,[1] has its headquarters in Mobile. It currently operates several facilities in Mobile County to promote, as stated in its certificate of incorporation, “the health, social, educational, vocational, and character development” of youth in Baldwin and Mobile Counties. In 1996, it was also operating facilities in Baldwin County. In particular, it operated a facility in Fairhope sometimes referred to as the “Fairhope Boys and Girls Club” (“the Fairhope Club”). It operated another such facility in Daphne sometimes referred to as the “Daphne Boys and Girls Club” (“the Daphne Club”). The Fairhope Club and the Daphne Club had no legal existence apart from their affiliation with the Club.
On November 13, 1996, B.R. Wilson, Jr., one of the incorporators of the Club and a principal benefactor, executed a “gift deed,” transferring to the Club approximately 17 acres of real estate (“the property”). Contemporaneously with the execution of the deed, Wilson gave a letter to the Club (“the letter”); that letter stated: “Gentlemen:
“I am giving to you the property, located in Point Clear, known as my ‘Stables.’ This gift is totally unrestricted. The property is presently occupied by Bill Adams, who is operating the stables, mostly for use by Grand Hotel guests and other ‘paying customers.’ I believe that he is technically ‘holding over on a month to month basis’ since his written leases expired some time ago. He has been working with the [Club] in the past and wants to work with you in the future, not only as a tenant, but also to allow your members to use the facilities on some mutually agreeable basis. I understand that you intend to attempt to work out a mutually satisfactory arrangement with Bill Adams. I appreciate that; but it is not a condition of this gift.
“I understand that you hope to continue the use of my son’s name in connection with these facilities, or some other facility in the Fairhope-Point Clear area. I also appreciate that; but it is not a condition of this gift. I will also again confirm to you that you are free to ultimately dispose of this property if, in your judgment, it is in the best interest of the [C]lub to do so. It is my desire and understanding that you will use the proceeds from any such disposition for the [C]lub’s facilities and/or activities in the Fairhope-Point Clear area.”
Wilson died in 1997.
In March 2000, the Club sold the property and deposited the proceeds into three *819 separate accounts, two of which were separately earmarked for the Daphne Club and for the Fairhope Club. However, on May 31, 2009, the Club discontinued its operations in Daphne and Fairhope, citing “operating deficits” as a contributing factor. It transferred the remainder of the proceeds from the sale of the property to an account in the Community Foundation of South Alabama (“the bank”).
On June 1, 2009, the facilities in Daphne and Fairhope were reopened by volunteers and former Club personnel, who began operating the youth centers under their own independent management structures. Subsequently, some of these individuals incorporated Rotary Inc. and Wilson Inc., under which they continued to operate the facilities in Fairhope and Daphne, respectively.
Rotary Inc. and Wilson Inc. sued the Club, seeking declaratory and injunctive relief. They alleged that the Club “ha[d] used,” or, perhaps, was “anticipating] using,” the proceeds for its own operations, rather than for the use of the facilities then being operated by Rotary Inc. and Wilson Inc. They sought a judgment (1) declaring that the “desire and understanding” of B.R. Wilson expressed in the letter controlled the disposition of the funds, and (2) enjoining the use of the proceeds for anything but the benefit of the youth facilities as operated by Rotary Inc. in Fair-hope and by Wilson Inc. in Daphne.
After a bench trial, the trial court entered a judgment setting forth its findings of fact and conclusions of law. More specifically, it considered the letter and testimony of witnesses regarding B.R. Wilson’s intent and found that it was his intent that the property or proceeds from the sale of the property would “be held in trust for the operation of the Baldwin County facilities” and that the bank was holding the funds in trust as trustee for the “exclusive benefit of the [youth facilities in Fairhope and Daphne].” (Emphasis added.) It concluded that “because entities [ (Rotary Inc. and Wilson Inc.) ] now exist which are capable of receiving and administering the sales proceeds for the benefit of the Fair-hope and Daphne clubs, there is no further purpose for the continued existence of the trust.” (Emphasis added.) The court ordered the termination of the “trust” and the disbursal of the remainder of the proceeds, namely, $893,377.02 and $210,704.76, to Rotary Inc. and Wilson Inc., respectively-
The Club appealed, challenging, among other things, the standing of Rotary Inc. and Wilson Inc. to sue over distribution of the proceeds of the sale of the property. In particular, the Club contends that the entities that may sue a nonprofit corporation are defined by the Alabama Nonprofit Corporation Act, Ala.Code 1975, §§ 10A-3-1.01 through 10A-3-8.02 (“the Act”),[2] and that Rotary Inc. and Wilson Inc. are not included in that roster of entities. According to Rotary Inc. and Wilson Inc., there is a “special standing rule [that] applies to challenges to the administration of a public charitable trust as is at issue here.” Rotary Inc. and Wilson Inc.’s brief, at 36. Because standing is the dispositive and threshold issue and because the facts pertinent to that issue are undisputed, our standard of review is de novo.

II. Discussion

“ ‘Standing represents a jurisdictional requirement which remains open to *820 review at all stages of the litigation.’ ” Ex parte Fort James Operating Co., 871 So.2d 51, 54 (Ala.2003) (quoting National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)(emphasis added)). “Like any other fact essential to recovery, the plaintiff has the burden of proving standing.” Byrd v. MorEquity, Inc., 94 So.3d 378, 379 (Ala.Civ.App.2012) (plurality opinion). “ “When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.’ ” Riley v. Pate, 3 So.3d 835, 838 (Ala.2008) (quoting State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999)).
“ ‘Standing is “ ‘ “[t]he requisite personal interest that must exist at the commencement of the litigation.” ’ ” ’ Cadle Co. v. Shabani, 4 So.3d 460, 462-63 (Ala.2008) (emphasis added) (quoting Pharmacia Corp. v. Suggs, 932 So.2d 95, 98 (Ala.2005), quoting in turn In re Allison G., 276 Conn. 146, 156, 883 A.2d 1226, 1231 (2005))....
[[Image here]]
“This Court has often said that it is 1 “ ‘duty bound to notice ex mero motu the absence of subject-matter jurisdiction.’ ” ’ Riley v. Hughes, 17 So.3d 643, 648 (Ala.2009) (emphasis added) (quoting Baldwin County v. Bay Minette, 854 So.2d 42, 45 (Ala.2003), quoting in turn Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 945 n. 2 (Ala.1994)). However, just because the Court is duty bound to notice the absence of subject-matter jurisdiction, it does not follow that it is so bound to construct theories and search the record for facts to support the existence of jurisdiction for plaintiffs ... [whether they are appellants or appellees]. On the contrary,
“ ‘when the parties have not provided sufficient legal or factual justification for this Court’s jurisdiction, this Court is not obligated to embark on its own expedition beyond the parties’ arguments in pursuit of a reason to exercise jurisdiction. The burden of establishing the existence of subject-matter jurisdiction falls on the party invoking that jurisdiction. See, e.g., Ex parte HealthSouth Corp., 974 So.2d 288 (Ala.2007) (setting forth the plaintiffs burden of demonstrating standing to bring an action, an issue of subject-matter jurisdiction); ... Ex parte Ray-El, 911 So.2d 1100, 1104 (Ala.Crim.App.2004) (placing the burden to “ ‘justify the jurisdiction of this court’ ” on the person bringing a habeas petition as a “next friend” (quoting Whitmore v. Arkansas, 495 U.S. 149, 164, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990))); cf. Bush v. Laggo Props., L.L.C., 784 So.2d 1063, 1065 (Ala.Civ.App.2000) (“Once a party challenges the trial court’s jurisdiction, pursuant to Rule 12(b)(1), [Ala. R. Civ. P.,] the burden of establishing jurisdiction is on the plaintiff.” (citing Menchaca v. Chrysler Credit Corp., 613 F.2d 507 (5th Cir.1980))).’
“Crutcher v. Williams, 12 So.3d 631, 635-36 (Ala.2008)(some emphasis added).”
Blevins v. Hillwood Office Ctr. Owners’ Ass’n, 51 So.3d 317, 321-22 (Ala.2010) (first emphasis added).
For the special standing rule advanced by Rotary Inc. and Wilson Inc., they cite only Jones v. Grant, 344 So.2d 1210 (Ala.1977). Jones “adopt[ed] the rule that beneficiaries with a sufficient special interest in the enforcement of a charitable trust can institute a suit as to that trust.” 344 So.2d at 1212 (emphasis added). The special-interest rule adopted in Jones is an exception to the general rule that “mere potential beneficiaries, whose interest is no *821 greater than the interest of all the other members of a large class of potential beneficiaries of a charitable trust, have no standing to maintain an action for the enforcement of the trust.” Rhone v. Adams, 986 So.2d 374, 377 (Ala.2007).
However, the holding in Jones has been superseded by the Act, as recognized in Cook v. Lloyd Noland Foundation, Inc., 825 So.2d 83, 86-87 (Ala.2001) (noting that “for trusts incorporated as nonprofit corporations [the Act] superseded that right as recognized by Jones ”), and in Rhone, 986 So.2d at 377 n. 1. On the basis of the predecessor of the Act, the Court in Cook affirmed the trial court’s dismissal of an action by purported beneficiaries of a charitable trust incorporated under the Act, which action sought, among other things, to enjoin a sale contemplated by the corporation. Cook, 825 So.2d at 84.
The Act provides, in pertinent part:
“No act of a nonprofit corporation and no conveyance or transfer of real or personal property to or by a nonprofit corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do an act or to make or receive a conveyance or transfer, but lack of capacity or power may be asserted:
“(1) In a proceeding by a member or a director against the nonprofit corporation to enjoin the doing or continuation of unauthorized acts, or the transfer of real or personal property by or to the nonprofit corporation. ...
“(2) In a proceeding by the nonprofit corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through members in a representative suit, against the officers or directors of the nonprofit corporation for exceeding their authority.
“(3) In a proceeding by the Attorney General, as provided in this chapter, to dissolve the nonprofit corporation, or in a proceeding by the Attorney General to enjoin the nonprofit corporation from performing unauthorized acts, or in any other proceeding by the Attorney General.”
§ 10A-3-2.44, Ala.Code 1975 (emphasis added).
It is undisputed that the Club is a nonprofit corporation within the purview of the Act, and Rotary Inc. and Wilson Inc. do not claim, or purport, to be members[3] or directors of the Club. Thus, it is clear that Rotary Inc. and Wilson Inc. are not such persons as are authorized by § 10A-3-2.44 to commence an action against the Club relating to the transactions challenged in this case. In short, having relied for standing solely on Jones, which is inap-posite, Rotary Inc. and Wilson Inc. have failed to demonstrate that they are proper parties to sue the Club over the disposition of the proceeds from the sale of the property. Consequently, the complaint filed by Rotary Inc. and Wilson Inc. failed to invoke the subject-matter jurisdiction of the trial court.

III. Conclusion

In summary, Rotary Inc. and Wilson Inc. have failed to show that they have standing to challenge the Club’s disposition of the proceeds of the sale of the property donated to the Club by B.R. Wilson, Jr. Therefore, the trial court’s judgment was void for lack of subject-matter *822 jurisdiction. “ ‘A judgment entered by a court lacking subject-matter jurisdiction is absolutely void and will not support an appeal; an appellate court must dismiss an attempted appeal from such a void judgment.’ Vann v. Cook, 989 So.2d 556, 559 (Ala.Civ.App.2008).” MPQ, Inc. v. Birmingham Realty Co., 78 So.3d 391, 394 (Ala.2011). Accordingly, we vacate the judgment and dismiss the case and the appeal.
JUDGMENT VACATED; CASE DISMISSED; AND APPEAL DISMISSED.
MALONE, C.J., and BOLIN and MAIN, JJ., concur.
MURDOCK, J., concurs in the result.

. Throughout its history, the Club has undergone a series of name changes, which are not here pertinent.

. The provisions of the Act apply to "[a]ll nonprofit corporations organized hereunder” and to ”[a]ll nonprofit corporations heretofore organized under any act ... heretofore repealed, for a purpose ... for which a nonprofit corporation might be organized under this chapter.” § 10A-3-1.03.

. Section 10A-3-1.02(5) defines a ''member” as "[o]ne having membership rights in a corporation in accordance with the provisions of its governing documents. A member may be a natural person, a partnership, a professional association or professional corporation, a corporation for profit or a nonprofit corporation.”