REL: 07/03/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

### 1130051

_____

**Ex parte The Boys and Girls Clubs of South Alabama, Inc.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: State of Alabama et al.**

**v.**

**The Boys and Girls Clubs of South Alabama, Inc., and The Community Foundation of South Alabama)**

**(Baldwin Circuit Court, CV-13-900812)**

MURDOCK, Justice.

The Boys and Girls Clubs of South Alabama, Inc. ("BGCSA"), seeks a writ of mandamus ordering the Baldwin

1130051

Circuit Court to dismiss a declaratory-judgment action filed against it and The Community Foundation of South Alabama by the attorney general of Alabama, Fairhope-Point Clear Rotary Youth Programs, Inc. ("Rotary Inc."), and Ruff Wilson Youth Organizations, Inc. ("Wilson Inc.") (hereinafter the latter two parties are referred to collectively as "the Eastern Shore Clubs"). We grant the petition.

## I.  Facts and Procedural History

This is the third action that has come before this Court arising out of a dispute between BGCSA and the Eastern Shore Clubs concerning certain funds. Many of the pertinent underlying facts were provided in our opinion in the first action, <u>The Boys & Girls Clubs of South Alabama, Inc. v. Fairhope-Point Clear Rotary Youth Programs, Inc.</u>, 114 So. 3d 817 (Ala. 2012). In that case we explained that BGCSA

> "operates several facilities in Mobile County to promote, as stated in its certificate of incorporation, 'the health, social, educational, vocational, and character development' of youth in Baldwin and Mobile Counties. In 1996, it was also operating facilities in Baldwin County. In particular, it operated a facility in Fairhope sometimes referred to as the 'Fairhope Boys and Girls Club' ('the Fairhope Club'). It operated another such facility in Daphne sometimes referred to as the 'Daphne Boys and Girls Club' ('the Daphne Club')."

2

114 So. 3d at 818.

On November 13, 1996, B.R. Wilson, Jr., one of the incorporators and a principal benefactor of BGCSA, executed a deed transferring to BGCSA approximately 17 acres of real estate ("the property"). Contemporaneously with the execution of the deed, Wilson gave a letter to BGCSA that stated Wilson's intentions and stipulations concerning his gift of the property. The letter stated that BGCSA was "'free to ultimately dispose of this property,'" but that it was Wilson's "'desire and understanding that [BGCSA] will use the proceeds from any such disposition for [BGCSA's] facilities and/or activities in the Fairhope-Point Clear area.'" 114 So. 3d at 818. Wilson died in 1997.

> "In March 2000, [BGCSA] sold the property and deposited the proceeds into three separate accounts, two of which were separately earmarked for the Daphne Club and for the Fairhope Club. However, on May 31, 2009, the Club discontinued its operations in Daphne and Fairhope, citing 'operating deficits' as a contributing factor. It transferred the remainder of the proceeds from the sale of the property to an account in the Community Foundation of South Alabama ('the bank').

> "On June 1, 2009, the facilities in Daphne and Fairhope were reopened by volunteers and former [BGCSA] personnel, who began operating the youth centers under their own independent management structures. Subsequently, some of these individuals

3

incorporated Rotary Inc. and Wilson Inc., under which they continued to operate the facilities in Fairhope and Daphne, respectively."

Id. at 818-19.

On April 22, 2010, the Eastern Shore Clubs filed an action in the Baldwin Circuit Court seeking declaratory and injunctive relief against BGCSA. The Eastern Shore Clubs alleged that BGCSA "ha[d] used," or, perhaps, was "anticipat[ing] using," the proceeds from the sale of the property ("the Wilson funds") for its own operations, rather than for the benefit of the Eastern Shore Clubs. A bench trial ensued. On March 15, 2012, the Baldwin Circuit Court entered a judgment in which it concluded that Wilson's intent was that the Wilson funds should be used for the "exclusive benefit of the Fairhope and Daphne Clubs." The Baldwin Circuit Court ordered the disbursal of the remainder of the Wilson funds, namely $1,104,081.78, as follows: $893,377.02 to Rotary Inc. and $210,704.76 to Wilson Inc.

BGCSA appealed the Baldwin Circuit Court's judgment to this Court. In Boys & Girls Clubs of South Alabama, this Court vacated the Baldwin Circuit Court's judgment and dismissed the case and the appeal. This Court reasoned that

4

1130051

the Eastern Shore Clubs' suit was an action under the Alabama Nonprofit Corporation Law, Ala. Code 1975, §§ 10A-3-1 through 10A-3-8.02, because they contended that BGCSA lacked the power to spend the Wilson funds in any way other than for the benefit of the Eastern Shore Clubs. In effect, the Eastern Shore Clubs sought a declaration that BGCSA had committed or would commit an ultra vires act by spending the Wilson funds in any manner that did not benefit the Eastern Shore Clubs. Actions alleging ultra vires acts against a nonprofit corporation are governed by § 10A-3-2.44, Ala. Code 1975, which, in relevant part, provides:

> "No act of a nonprofit corporation and no conveyance or transfer of real or personal property to or by a nonprofit corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do an act or to make or receive a conveyance or transfer, but lack of capacity or power may be asserted:
>
> "(1) In a proceeding by a member or a director against the nonprofit corporation to enjoin the doing or continuation of unauthorized acts, or the transfer of real or personal property by or to the nonprofit corporation. ...
>
> "(2) In a proceeding by the nonprofit corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through members in a representative suit, against the officers

5

1130051

or directors of the nonprofit corporation for exceeding their authority.

"(3) In a proceeding by the Attorney General, as provided in this chapter, to dissolve the nonprofit corporation, or in a proceeding by the Attorney General to enjoin the nonprofit corporation from performing unauthorized acts, or in any other proceeding by the Attorney General."

Based on the requirements of § 10A-3-2.44, a plurality of this Court reasoned in Boys & Girls Clubs of South Alabama:

"It is undisputed that [BGCSA] is a nonprofit corporation within the purview of the [Alabama Nonprofit Corporation Law], and [the Eastern Shore Clubs] do not claim, or purport, to be members or directors of [BGCSA]. Thus, it is clear that Rotary Inc. and Wilson Inc. are not such persons as are authorized by § 10A-3-2.44 to commence an action against [BGCSA] relating to the transactions challenged in this case. In short, ... Rotary Inc. and Wilson Inc. have failed to demonstrate that they are proper parties to sue [BGCSA] over the disposition of the [Wilson funds]. Consequently, the complaint filed by Rotary Inc. and Wilson Inc. failed to invoke the subject-matter jurisdiction of the trial court."

114 So. 3d at 821 (footnote omitted).

On May 16, 2013, BGCSA filed in the Mobile Circuit Court a declaratory-judgment action against the Eastern Shore Clubs seeking entitlement to the Wilson funds and the right to spend the funds as it sought fit ("the Mobile action"). On June 6,

6

2013, BGCSA provided notice of the action to the attorney general, who waived any further service or right to be heard.

On June 13, 2013, the Eastern Shore Clubs filed a motion to dismiss the Mobile action contending that, under the principles stated in Boys & Girls Clubs of South Alabama, BGCSA lacked standing to bring the action. On August 26, 2013, the Mobile Circuit Court denied the Eastern Shore Clubs' motion.

The Eastern Shore Clubs petitioned this Court for a writ of mandamus, which sought an order directing the Mobile Circuit Court to dismiss the Mobile action for the same reason they asserted in their motion to dismiss. On December 9, 2013, this Court denied the mandamus petition by order (no. 1121540).

On June 13, 2013, the attorney general's office, on behalf of the Eastern Shore Clubs,[1] filed a declaratory-judgment action in the Baldwin Circuit Court against BGCSA and

---

[1]The attorney general does not claim that the State has an interest in the Wilson funds. The respondents' brief states that the attorney general is involved to seek compliance by the Eastern Shore Clubs with the requirements of § 10A-3-2.44, Ala. Code 1975.

1130051

the Community Foundation of South Alabama[2] seeking a "determination of the ownership of the [Wilson] funds" ("the present action"). On July 17, 2013, BGCSA filed a motion to dismiss the action, contending that the action was "barred by Alabama's abatement statute, Alabama Code § 6-5-440." The Baldwin Circuit Court denied the motion on September 30, 2013. Subsequently, BGCSA filed a petition for a writ of mandamus asking this Court to direct the Baldwin Circuit Court to vacate its order denying BGCSA's motion to dismiss and to dismiss the present action.

## II.  Standard of Review

"'[A] writ of mandamus is an extraordinary remedy, which requires the petitioner to demonstrate a clear, legal right to the relief sought, or an abuse of discretion.' Ex parte Palm Harbor Homes, Inc., 798 So. 2d 656, 660 (Ala. 2001). Mandamus is the appropriate remedy to correct a trial court's failure to properly apply § 6-5-440. See Ex parte Chapman Nursing Home, Inc., 903 So. 2d 813 (Ala. 2004); Ex parte Breman Lake View Resort, L.P., 729 So. 2d 849, 852 (Ala. 1999)."

Ex parte J.E. Estes Wood Co., 42 So. 3d 104, 108 (Ala. 2010).

---

[2]The parties agree that the Community Foundation of South Alabama is simply the holder of the Wilson funds and that it claims no ownership right in those funds.  It is not a party to this mandamus proceeding.

8

1130051

## III. Analysis

The contentions of the parties are straightforward. BGCSA contends that the present action is barred by § 6-5-440, Ala. Code 1975. Section 6-5-440 provides:

> "No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."

BGCSA notes that the Mobile action and the present action are both declaratory-judgment actions seeking to determine who is entitled to the Wilson funds and that the same principal parties -- BGCSA and the Eastern Shore Clubs -- are involved in both actions. BGCSA further observes that the Mobile action was filed on May 16, 2013, while the present action was filed on June 13, 2013. BGCSA argues that all the requirements of § 6-5-440 are fulfilled and that, therefore, the abatement statute requires the dismissal of the later filed present action.

The attorney general and the Eastern Shore Clubs do not dispute that the two actions concern the same cause. Indeed, in their brief the attorney general and the Eastern Shore

9

Clubs state that "[t]he underlying controversy in the present Baldwin County case is the same as in the Mobile case ...." They assert, however, that "[t]he only significant difference between these two actions, which is the basis of the Mobile Litigation's impropriety, is that Attorney General Luther J. Strange, III, [is a plaintiff in] the Baldwin Litigation while the Attorney General is not a party to the pending Mobile Litigation."

The attorney general and the Eastern Shore Clubs contend that their action is not barred because, they argue, the Mobile Circuit Court lacked subject-matter jurisdiction over the Mobile action in that BGCSA lacked "standing" to file the Mobile action under the principles enunciated in Boys & Girls Clubs of South Alabama. The attorney general and the Eastern Shore Clubs in essence argue that BGCSA brought an action against the Eastern Shore Clubs under § 10A-3-2.44 but that BGCSA does not fit into any of the three categories of parties who may bring such a claim: BGCSA is not a member or a director of the Eastern Shore Clubs as contemplated by § 10A-3-2.44(1), BGCSA's suit is not suit against its own officers and directors as contemplated by § 10A-3-2.44(2), and the

10

attorney general did not file the Mobile action as contemplated by § 10A-3-2.44(3). Therefore, the attorney general and the Eastern Shore Clubs contend, BGCSA lacked "standing" to bring the Mobile action. They reason that because BGCSA lacked standing, the Mobile Circuit Court lacked subject-matter jurisdiction over that action. Based on this contention, the attorney general and the Eastern Shore Clubs take the position that the present action should be considered as the only action now pending on the matter of the disposition of the Wilson funds and that, accordingly, § 6-5-440 is not implicated.

We begin our analysis by reiterating that the opinion in Boys & Girls Clubs of South Alabama, upon which the Eastern Shore Clubs seek to rely, was a plurality opinion. As such, that opinion does not represent binding precedent. Furthermore, although that plurality opinion was premised on a purported lack of "standing" by the Eastern Shore Clubs, precedent from this Court makes it clear that a deficiency in the plaintiffs' claim of the nature at issue in that action was a failure to state a claim upon which relief could be granted, not a lack of standing. We have noted that "our

11

1130051

courts too often have fallen into the trap of treating as an issue of 'standing' that which is merely a failure to state a cognizable cause of action or legal theory, or a failure to satisfy the injury element of a cause of action." Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So. 3d 1216, 1219 (Ala. 2010). In delineating the distinction between the concepts of standing and failure to state a claim, the Wyeth Court quoted the authors of Federal Practice and Procedure:

> "'Standing goes to the existence of sufficient adversariness to satisfy both Article III case-or-controversy requirements and prudential concerns. In determining standing, the nature of the injury asserted is relevant to determine the existence of the required personal stake and concrete adverseness. ... The focus of the cause-of-action inquiry must not be confused with standing —- it does not go to the quality or extent of the plaintiff's injury, but to the nature of the right asserted.'"

42 So. 3d at 1220 (quoting 13A Charles Alan Wright, Arthur K. Miller, and Edward H. Cooper, Federal Practice & Procedure § 3531.6 (2008)) (emphasis omitted; emphasis added).

12

Assuming the allegations in the complaint in <u>Boys & Girls Clubs of South Alabama</u> were true,[3] there is no question that the Eastern Shore Clubs therein alleged an injury, i.e., the deprivation of funds to which they claimed to be entitled, that gave rise to the adverseness necessary for standing. The issue before the Court was whether the Eastern Shore Clubs met the elements of the claim they had asserted under § 10A-3-2.44. The Court concluded that on the face of their complaint the Eastern Shore Clubs failed to meet the statutory requirements for an action under § 10A-3-2.44. In other words, the deficiency in their action was that the "legal theories asserted by the [Eastern Shore Clubs] are [not] recognized by Alabama law; they are not questions of the [Eastern Shore Clubs'] 'standing' to assert and attempt to prove those legal theories in our courts." <u>Ex parte MERSCORP,</u>

_____

[3]"In analyzing whether [the plaintiff] has standing at the dismissal stage, we must assume that [the plaintiff] states a valid legal claim ... and 'must accept the factual allegations in the complaint as true.'" <u>Information Handling Servs., Inc. v. Defense Automated Printing Servs.</u>, 338 F.3d 1024, 1029 (D.C. Cir. 2003) (quoting <u>Sturm, Ruger & Co. v. Chao</u>, 300 F.3d 867, 871 (D.C. Cir. 2002)). See also <u>Wyeth, Inc.</u>, 42 So. 3d at 1220 (noting that "we assume th[e] legal theory [advanced by the plaintiff] to be viable for purposes of our standing inquiry").

1130051

<u>Inc.</u>, [Ms. 1111370, Sept. 20, 2013] ___ So. 3d ___, ___ (Ala. 2013).

The fact that the deficiency in <u>Boys & Girls Clubs of South Alabama</u> was not one of standing but rather of a failure to satisfy the elements of § 10-3-2.44 undermines the argument of the attorney general and the Eastern Shore Clubs in the present case. They contend that BGCSA lacked standing in the Mobile action because, they say, BGCSA's action was brought under § 10A-3-2.44 and BGCSA was not a proper party to bring the action under the requirements of that statute. The attorney general and the Eastern Shore Clubs conclude that because BGCSA lacked standing, the Mobile Circuit Court lacked subject-matter jurisdiction over the Mobile action. As the above discussion concerning <u>Boys & Girls Clubs of South Alabama</u> indicates, however, the alleged deficiency in the Mobile action raised by the attorney general and the Eastern Shore Clubs involves an alleged failure to state a claim, not a failure of standing. A failure to state a claim does not implicate a court's subject-matter jurisdiction. Thus, the Mobile Circuit Court had jurisdiction to entertain BGCSA's action, and that action was pending at the time the attorney

14

1130051

general and the Eastern Shore Clubs filed the present action in the Baldwin Circuit Court. In short, the attorney general and the Eastern Shore Clubs are incorrect in contending that § 6-5-440 is inapplicable on the ground that the present action in the Baldwin Circuit Court should be considered as the only pending action that concerns the disposition of the Wilson funds.[4]

The argument of the attorney general and the Eastern Shore Clubs is also problematic because it incorrectly characterizes the nature of the Mobile action. As noted above, the attorney general and the Eastern Shore Clubs assume that § 10A-3-2.44 applies to the Mobile action, but that section concerns "act[s] of a nonprofit corporation" or "conveyance[s] or transfer[s] of real or personal property to or by a nonprofit corporation" that a challenger alleges "the corporation was without capacity or power to do." In the

---

[4]Even if questions existed as to the jurisdiction of the Mobile Circuit Court over the Mobile action, those questions would be within the province of the Mobile Circuit Court, itself. An argument (that we need not further address in this case) exists that it is not for a court in one circuit to treat an action initiated in another circuit as if it were not pending and that, unless and until the court in which that action is filed dismisses it, the action remains pending for purposes of § 6-5-440.

15

Mobile action, BGCSA obviously does not contend that it lacks the power to spend the Wilson funds in any manner it deems appropriate. Likewise, BGCSA is not challenging in the Mobile action an act of the Eastern Shore Clubs as ultra vires (nor does it have to, because BGCSA has always controlled the Wilson funds). In short, the Mobile action, unlike the 2010 action filed by the Eastern Shore Clubs, does not challenge an alleged ultra vires act of a nonprofit corporation, and it therefore is not governed by § 10A-3-2.44.[5]

Instead, BGCSA seeks a judgment clarifying its right to the Wilson funds as a result of the doubt created by the March 15, 2012, judgment of the Baldwin Circuit Court that this Court vacated in Boys & Girls Clubs of South Alabama. The Mobile Circuit Court observed in its order denying the Eastern Shore Clubs' motion to dismiss the Mobile action that § 10A-1-2.11, Ala. Code 1975, expressly states that nonprofit corporations possess "the power to ... sue, be sued, complain, and defend suit in its entity name," and that such an entity

---

[5]In Boys & Girls Clubs of South Alabama, this Court stated that "it is clear that [the Eastern Shore Clubs] are not such persons as are authorized by § 10A-3-2.44 to commence an action against [BGCSA] relating to the transactions challenged in this case." 114 So. 3d at 821 (emphasis added).

16

1130051

"has the same powers as an individual to take action necessary or convenient to carry out its business and affairs."  The Mobile Circuit Court also noted that § 6-6-220, Ala. Code 1975, provides that a nonprofit corporation is a "person" within the meaning of the Declaratory Judgment Act.  Thus, BGCSA is empowered to seek a declaratory judgment that will help it carry out its business and affairs, which is precisely what BGCSA has done by filing the Mobile action.

Because the Mobile action is not governed by § 10A-3-2.44, the action did not need to be brought by a member or director of BGCSA or by the attorney general.  For these reasons as well, the Mobile action was and is properly before the Mobile Circuit Court.  In reaching this conclusion, we merely express by opinion that which was implied by the December 9, 2013, order of this Court denying the Eastern Shore Clubs' petition for a writ of mandamus in the Mobile action.

Having confirmed the fact that the Mobile action is properly before the Mobile Circuit Court, we address the only remaining question:  Whether § 6-5-440 does, in fact, require the dismissal of the present action.  This Court has stated

17

that § 6-5-440 "means that 'where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgments or decrees.'" Regions Bank v. Reed, 60 So. 3d 868, 884 (Ala. 2010) (quoting Ex parte Burch, 236 Ala. 662, 665, 184 So. 694, 697 (1938)). There is no question that the Mobile action was filed before the present action. As we noted earlier in this analysis, the Eastern Shore Clubs concede that the Mobile action and the present action involve the same cause.

The only difference between the two actions noted by the Eastern Shore Clubs -- the presence of the attorney general as a party in the present action but not in the Mobile action -- has no bearing on a determination of whether the present action is subject to abatement because the attorney general does not claim any independent interest in the subject of the cause of the two actions.

This Court has observed that "[t]he application of § 6-5-440 'is guided by "whether a judgment in one suit would be res judicata of the other."'" Ex parte Compass Bank, 77 So. 3d

18

1130051

578, 581 (Ala. 2011) (quoting <u>Chiepalich v. Coale</u>, 36 So. 3d 1, 3 (Ala. 2009), quoting in turn <u>Sessions v. Jack Cole Co.</u>, 276 Ala. 10, 12, 158 So. 2d 652, 654-55 (1963)). "'"[T]he party identity criterion of <u>res judicata</u> does not require complete identity, but only that the party against whom <u>res judicata</u> is asserted was either a party or in privity with a party to the prior action[.]"'" <u>Chapman Nursing Home, Inc. v. McDonald</u>, 985 So. 2d 914, 921 (Ala. 2007) (quoting <u>Dairyland Ins. Co. v. Jackson</u>, 566 So. 2d 723, 725 (Ala. 1990), quoting in turn <u>Whisman v. Alabama Power Co.</u>, 512 So. 2d 78, 82 (Ala. 1987)).

This Court has explained:

"Our caselaw requires that 'there is <u>a substantial identity of parties</u> in the two actions.' <u>Ex parte Ford Motor Credit Co.</u>, 772 So. 2d 437, 440 (Ala. 2000). Substantial identity requires that the '"'parties be identical, sometimes referred to as the mutuality of estoppel requirement.'"' <u>Stewart v. Brinley</u>, 902 So. 2d 1, 10 (Ala. 2004) (quoting <u>McMillian v. Johnson</u>, 878 F. Supp. 1473, 1520 (M.D. Ala. 1995)). '"An exception is made to this requirement for parties in privity with a party to the prior action."' <u>Stewart</u>, 902 So. 2d at 10 (quoting <u>McMillian</u>, 878 F. Supp. at 1520) (emphasis omitted). A party is deemed to be in privity with a party to a prior action when there is '"'<u>an identity of interest in the subject matter of litigation</u>.'"' <u>Stewart</u>, 902 So. 2d at 11 (quoting <u>Hughes v. Martin</u>, 533 So. 2d 188, 191 (Ala. 1988),

19

quoting in turn <u>Issue Preclusion in Alabama</u>, 32 Ala. L. Rev. 500, 521 (1981)).

"....

"This Court has stated: '"'"<u>A person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative</u>."'"' <u>Gonzalez, LLC v. DiVincenti</u>, 844 So. 2d 1196, 1203 (Ala. 2002) (quoting <u>Green v. Wedowee Hosp.</u>, 584 So. 2d 1309, 1315 (1991), quoting other cases)."

<u>Greene v. Jefferson Cnty. Comm'n</u>, 13 So. 3d 901, 912 (Ala. 2008) (emphasis added).

Assuming, without deciding, that the attorney general has "standing" to bring the claims he asserts in the present action and that he has asserted cognizable claims in the action, those claims indisputably are asserted for the benefit of, or in derivation of the purported rights of, the Eastern Shore Clubs. Applying the foregoing principles of "privity" and "virtual representation," it is clear that there is a "substantial identity" of parties as between the Mobile action and the present action.

Further, we note that the fact that the Eastern Shore Clubs are plaintiffs in the present action but are defendants

20

in the Mobile action is inconsequential to the application of the abatement statute in this instance.

> "This Court has held that the obligation imposed on a defendant under Rule 13(a), Ala. R. Civ. P., to assert compulsory counterclaims, when read in conjunction with § 6-5-440, Ala. Code 1975, which prohibits a party from prosecuting two actions for the same cause and against the same party, is tantamount to making the defendant with a compulsory counterclaim in the first action a 'plaintiff' in that action (for purposes of § 6-5-440) as of the time of its commencement. See, e.g., Ex parte Parsons & Whittemore Alabama Pine Constr. Corp., 658 So. 2d 414 (Ala. 1995); Penick v. Cado Systems of Cent. Alabama, Inc., 628 So. 2d 598 (Ala. 1993); Ex parte Canal Ins. Co., 534 So. 2d 582 (Ala. 1988). Thus, the defendant subject to the counterclaim rule who commences another action has violated the prohibition in § 6-5-440 against maintaining two actions for the same cause."

Ex parte Breman Lake View Resort, L.P., 729 So. 2d 849, 851 (Ala. 1999). Given that the claims asserted by the Eastern Shore Clubs in the present action constitute compulsory counterclaims in relation to the claims asserted by BGCSA in the Mobile action, the present action is subject to abatement under § 6-5-440.

The existence of the Mobile action requires the dismissal of the present action. See Ex parte J.E. Estes Wood Co., 42 So. 3d at 109 (observing that "where § 6-5-440 applies, it 'compels dismissal'" (quoting Ex parte Canal Ins. Co., 534 So.

21

1130051

2d 582, 585 (Ala. 1988) (emphasis omitted)). Accordingly, the Baldwin Circuit Court erred in denying BGCSA's motion to dismiss the present action on the basis of § 6-5-440.

## IV.  Conclusion

Section 6-5-440 compels the dismissal of the present action because another action involving the same cause and the same parties -- the Mobile action -- was filed first. Therefore, we grant the petition for a writ of mandamus and direct the Baldwin Circuit Court to vacate its September 30, 2013, order and to enter an order dismissing the present action.

PETITION GRANTED; WRIT ISSUED.

Stuart, Shaw, and Wise, JJ., concur.

Bolin, Parker, Main, and Bryan, JJ., concur in the result.

Moore, C.J., dissents.